SMITHART *v.* JOHN HANCOCK MUT. LIFE INS. CO.

(*Jackson.* April Term, 1934.)

Opinion filed May 19, 1934.

515

CLYDE H. KOEN and LEWIS E. LAMB, both of Memphis, for appellant.

HOLMES, CANALE, LOCH & GLANKLER and HAMILTON E. LITTLE, all of Memphis, for appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This is an action to enforce a contract of life and disability insurance, evidenced by a group policy issued to complainant's employer and by a certificate issued to complainant.

Complainant's contention is that the contract matured when he became wholly and permanently disabled while the contract was in force.

The issue as to the fact of complainant's disability was submitted to a jury. A verdict for the complainant

was set aside by the chancellor, and a new trial was granted. Thereafter, at the same term, the chancellor sustained the defendant's motion to dismiss the suit because the contract was not in force as life insurance at the date proofs of loss were filed. The Court of Appeals affirmed the chancellor, and the case is before us by *certiorari,* granted on complainant's petition.

The group policy was issued to the complainant's employer, Murray Wood Products Company. Complainant's certificate is dated November 17, 1930. The employer ceased operating its plant in the latter part of June, 1931, and on the 26th day of that month the contract of insurance expired by its own limitations. There was no reason to renew it, since there were no longer any employees to be insured.

Complainant avers that he became totally and permanently disabled on or before June 15, 1931, while the contract was in force, and about ten days before its expiration date. His certificate recites that, subject to the terms and conditions of the group policy, his life was insured for the sum of $2,000, and further that, if he shall furnish the company with due proof that he has become totally and permanently disabled, "the insurance hereunder will become available."

The bill admitted complainant's ignorance of the terms of the group or master policy, and called upon the insurer to disclose the same in its answer, which was done. The material provision is that, upon receiving due proof that the employee, "while insured under this policy," has become wholly and permanently disabled, the insurer will waive further payment of premium and will "pay in full settlement of all obligations to him under this policy

the amount of insurance in force hereunder upon his life at the time of the receipt of due proofs of such disability."

The applicable provisions of the certificate and of the group are quoted in the margin.[1] The defendant did not file the entire "group policy," but disclosed only the paragraph quoted, as containing the terms to which the certificate was subject.

No proofs of disability were filed by the complainant prior to June 26, 1931. His alleged disability, resulting from disease, had been existent only about ten days, and

[1] The certificate provides:

"Any employee who shall furnish the company with due proof that he has become totally disabled by injuries, sickness or disease, and has been continuously prevented thereby from performing any and every duty pertaining to his occupation and presumably will during his lifetime be prevented from pursuing any occupation for wages or profit, or if he has suffered the entire and irrevocable loss of the sight of both eyes, or the use of both hands, or both feet, or one hand and one foot, he shall be deemed to be totally and permanently disabled, and the insurance hereunder will become available, provided such disability or loss has been sustained before attaining the age of sixty."

The group policy provides:

"If any employee shall furnish the company with due proof that while insured under this policy and before having obtained the age of sixty, he has become wholly disabled by bodily injuries or disease, and will be permanently, continuously, and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the company will waive further payment of premium as to such employee and pay in full settlement of all obligations to him under this policy the amount of insurance in force hereunder upon his life at the time of the receipt of due proof of such disability, in a fixed number of installments chosen by the employer from the table in the paragraph entitled 'Modes of Settlement,' the first installment to be paid immediately upon receipt of due proofs of such disability."

it is doubtful whether he, in so short a time, could have furnished proof of its probable permanency. He gave the insurer notice of his disability by letter in January, 1932, and the insurer thereupon, without requesting formal or additional proofs, made its own investigation reporting in May, 1932, that it refused to pay because it did not find the complainant had suffered the requisite degree of disability.

Neither the group policy nor the certificate contains any limitation of time for the filing of proofs of loss; nor did the insurer in its answer to the bill make any point as to the time or form of the complainant's demand. The answer ''denies that complainant ever became permanently and totally disabled while his insurance under the aforesaid group policies was in force or effect.'' This was the only specific defense made by the answer, although it contains general denials that complainant is entitled to any benefits under the insurance in suit.

The reason assigned by the insurer for refusing to recognize the complainant's claim, and the defense set up in its answer to the bill, indicates that it was not until the issue of fact had been submitted to a jury that the insurer conceived that its contract is susceptible to the construction now urged for it. The issue of fact is altogether immaterial and the trial was a waste of time, under the insurer's construction of its contract, and that construction appears to have been presented to the chancellor for the first time after he had instructed the jury. This is referred to only in emphasis of the surprising and unusual effect of the insurance contract as construed by the other courts.

This court is in accord with the weight of au-

thority, in holding that reasonable time limits may be stipulated in insurance contracts for the filing of proofs of loss, and that compliance with such contractual requirements may be made a condition precedent to the right of recovery. *Blackman* v. *United States Casualty Co.*, 117 Tenn., 578, 103 S. W., 784; *Phoenix Cotton Oil Co.* v. *Royal Indemnity Co.*, 140 Tenn., 438, 205 S. W., 128. But in all such cases it is recognized that the substantive rights of the parties are fixed by the contract in force at the time of the happening of the contingency insured against and that the amount of the recovery is measured and limited by such contract.

And in cases on contracts of insurance against disability we have enforced stipulations that periodical payments should not begin until proofs of loss are filed. The amounts payable in such cases were, however, fixed by the contract in force at the date the disability accrued, and were in addition to the insurance payable at death. *Walters* v. *Life Ins. Co.*, 159 Tenn., 541, 20 S. W. (2d), 1038.

In the case last cited, and in *Hall* v. *Acacia Mut. Life Ass'n*, 164 Tenn., 93, 46 S. W. (2d), 56, we gave effect to provisions in contracts of life insurance that premiums would be waived only after the filing of proof of disability. In accord with that holding are *Bergholm* v. *Peoria Life Ins. Co.*, 284 U. S., 489, 52 S. Ct., 230, 76 L. Ed., 416, and numerous cases from other jurisdictions. The contracts involved in these cases contemplated that they would be kept in force after disability, by waiver of premium, in order that the insured's estate or beneficiary might be entitled to the face of the policy upon his death, in addition to periodical payments during his

disability. None of them provided for the maturity of the entire contract if the insured should suffer disability. Premiums due after disability were necessary to keep the insurance against death in force, and the courts have considered it a reasonable stipulation in such contracts that only premiums due after notice shall be waived.

The contract here presented is essentially different from those involved in the cases cited. If the employee suffered total and permanent disability "while insured under this policy," the amount payable is to be "in full settlement of all obligations to him under this policy." Upon the happening of the contingency of disability, therefore, the contract as to him matured in its entirety. He became entitled to the full amount of the insurance, and no future contingency could increase the amount payable to him. There was therefore no additional or continuing risk for which the insurer could demand future premiums. "It would be as anomalous to require a continuance of premium payments thereafter as it would be to require them after death." *Horn's Administrator* v. *Prudential Ins. Co. of America*, 252 Ky., 137, 65 S. W. (2d), 1017, 1019. Risk of loss is "of the very essence of insurance and forms the principal foundation of the contract." 1 Joyce on Insurance, p. 113, sec. 16. "If no risk attaches, no premium, in the absence of fraud, is earned." *Jones & Abbott* v. *Insurance Co.*, 90 Tenn., 604, 18 S. W., 260, 25 Am. St. Rep., 706. The stipulation of this contract that future premiums would be waived upon the receipt of proof of disability was therefore an empty gesture. In that event, even under the insurer's present construction of its contract, there would be no future premium to waive.

■ We quote from Joyce on Insurance, vol. 1, p. 588 (section 221a): "So it is declared that it is well settled that when liability has become fixed by the capital. fact of loss within the range of the responsibility assumed in the contract, courts are reluctant to deprive assured of the benefit of that liability by any narrow or technical construction of the conditions and stipulations which prescribe the formal requisite by means of which this accrued right is to be made available for his indemnification."

■ Ordinarily provisions for the making and filing of proofs of loss, compliance with which is made a condition precedent to a right of recovery, are within the category of formal requisites referred to in the quotation from Joyce, and are liberally construed in favor of the insured so as to avoid technical forfeitures. In the contract before us, the insurer has complicated the issue by inserting the stipulation for proof of disability in the primary contracting clause. Its apparent meaning is, not that the insured waives or forfeits anything by failing to make proof of his disability in time, but that his right to indemnity is to be measured by the amount of insurance in force on his life at the date he makes or files his proof. Mere lapse of time is not involved. The situation would have been the same in this case if proof of disability had been filed within two weeks after its occurrence rather than seven months later.

■ Notwithstanding this apparent intermingling of substantive and remedial rights in the clause under construction, we are persuaded that its effect is simply to authorize the insurer to claim a forfeiture if proof of disability is not made during the period for which premiums

522

are paid on the group policy and the employee's certificate. A stipulation for the filing of proofs of loss cannot, by either an adroit or a careless use of language, be transformed into anything more than an incidental or dependent condition of an insurance contract. Such stipulation is essentially foreign to the risk assumed by the insurer and against which protection is purchased by the insured. The substantive right of the insured employee to the face value of his certificate accrues and is fixed when he suffers total and permanent disability during the life of the certificate. Application of the letter of the contract to the situation then existent is that, although the contract does not limit the time within which the employee must file proof of his disability, his accrued right to the purchased indemnity will be lost if his employer fails to pay premiums falling due subsequent to the accrual of his right and prior to the date his proof is filed. This would be the effect of the terms of the contract on the rights of the parties, notwithstanding the confusing form of expression employed.

The contract is so understood by counsel for the insurer, who say on their brief: "The real issue between the parties is whether or not complainant can recover anything on the policy sued on, when he did not give any notice of disability or submit any proof of any claim for disability to the defendant until over seven months after his insurance terminated and lapsed, and at a time when there was no insurance in force upon complainant's life under the policy sued on." And it is so interpreted by the Court of Appeals, their opinion stating: "It would thus appear that by specific provision, in order to entitle complainant to recover anything, it must not only appear

that his total disability began while the policy was in force, but that the proof of his disability was furnished while the policy was in force.'' Counsel on their brief and the Court of Appeals in their opinion otherwise refer to the requirement that proof of disability be made while the insurance on the employee's life is in force as a condition precedent to complainant's right of recovery.

The necessity that subsequent premiums be paid to preserve the insured employee's accrued rights is therefore nothing more or less than a condition to the right of recovery, and as such is, in our opinion, an altogether groundless and unreasonable condition. The entire contract having matured, and the substantive right of the employee having become fixed, by the happening of the contingency insured against, the disability of the insured, there is no further or continuing risk to be carried by the insurer in consideration of further premiums, in so far as the disabled employee is concerned. Payment of additional premiums would not continue in force insurance on his life, since the entire value of the contract is already payable as indemnity for his disability. The condition is therefore impossible of performance, and to enforce it would be to nullify the contract and render it altogether unenforceable whenever the disability insured against occurs near the end of the term for which premiums have been paid, as in the case before us.

The certificate issued by the insurer to complainant contains the following clause: ''This insurance terminates whenever said employee for any reason whatsoever ceases to be in the employ of said employer.'' Ordinarily the occurrence of total and permanent disability would terminate an employment, and by this express provision

the insurance on the life of the employee would not even continue for the remainder of the period for which the premium had been paid. In this situation also the terms of the contract have made it impossible that proof of disability be made while insurance on the employee's life is in force, and have therefore imposed an impossible condition upon complainant's right to recover the contracted indemnity.

But assuming that under the terms of the group policy payment of further premiums would have continued in force the insurance on the life of the employee, after he had become wholly and permanently disabled, that result could have been effected only by a renewal of the contract between the insurer and the employer. The employee's certificate was dependent upon the continuation of the group policy, and the employee was powerless to comply with the condition that the policy be kept in force until he could prove his disability as both total and permanent.

The certificate gave to the employee the right, upon termination of his employment, to have issued to him, "upon the payment of the premium applicable," a policy of "life insurance in any one of the forms customarily issued by the Company," etc. It is said on the brief of the insurer that the complainant could have preserved his right to disability indemnity by exercising that privilege. We do not think so. A new contract of life insurance, bought and paid for by the employee, would not be the "insurance hereunder" referred to in the clause under construction; and, if such new contract could be satisfied by payment of indemnity for the disability previously suffered, the employee would receive no consideration whatever for the premium paid for the new contract, and

there would be no basis or justification for its exaction. Furthermore, by applying for and receiving a new contract of life insurance under that option, the employee would have rendered himself subject to a very likely probability that he thereby waived any further rights under the old contract, and relinquished his claim of indemnity for his existing disability.

It is the function of a court to interpret and enforce contracts as they are written, notwithstanding they may contain terms which may be thought harsh and unjust. A court is not at liberty to make a new contract for parties who have spoken for themselves. But the parties to a contract in litigation are not to be presumed to have intended to interpose an impossible condition to its performance, wholly repugnant to the primary purpose expressed by their formal and solemn undertaking. When such result is apparently required by a literal application of the language employed, an ambiguity is developed which invokes judicial discretion. If repugnant clauses cannot be harmonized so as to give effect to both, and one is subordinate to the principal purpose and intent of the contract, a court will disregard it rather than permit it to destroy and nullify the contract.

The rules of construction by which we are here guided are stated in *Laurenzi v. Insurance Co.*, 131 Tenn., 644, 662, 176 S. W., 1022, 1026: ". . . Where, in order to discover the true meaning of an instrument, it is essential to disregard its formal divisions, this course must be pursued, and . . . in case, under such construction, irreconcilable conflicts between the different parts of the instrument develop, that term which expresses the chief object and purpose of the contract must prevail,

and clauses containing provisions subordinate to the chief object and purpose of the contract must give way.'' The inherent soundness of these rules of construction, and their application here, are supported by *Teague* v. *Sowder,* 121 Tenn., 132, 114 S. W., 484, and *Bean* v. *Insurance Co.,* 111 Tenn., 186, 78 S. W., 104, and the authorities therein reviewed.

 As we interpret the contract, evidenced by the group policy and the certificate, the insurer contracted to pay the face value of the certificate upon receiving due proof that complainant died or became wholly and permanently disabled while the contract was in force. No time was stipulated within which proof of disability should be made, and proof within a reasonable time would meet the requirement of the contract. *Bank of Commerce & Trust Co.* v. *Northwestern Nat. Life Ins. Co.,* 160 Tenn., 551, 26 S. W. (2d), 135, 68 A. L. R., 1380. The condition that the insurance be continued in force on the life of complainant until the date proof of disability was filed was repugnant to the primary purpose of the insurance covering the term which included the date disability was suffered, and was made impossible of performance by the nature and terms of the insurance contract. The condition was therefore invalid and may not be enforced.

This insurance contract was construed by the Court of Appeals (Middle Division) in *John Hancock Mutual Life Insurance Company* v. *John H. Nave,* opinion filed at Knoxville by Mr. Justice DeWitt on April 28, 1934,[2] and a similar result was there reached. In accord is the recent case of *Missouri State Life Ins. Co.* v. *Foster*

---

[2]Not for publication.

(Ark.), 69 S. W. (2d), 869. The construction insisted upon by the insurer was sustained, upon somewhat different facts, in *McGifford* v. *Protective Life Ins. Co.*, 227 Ala., 588, 151 So., 349, and in *Kingsland* v. *Missouri State Life Ins. Co.* (Mo. App.), 66 S. W. (2d), 959. But in the latter cases the considerations which we have thought controlling do not appear to have been stressed.

In the consideration of this case, we have kept in mind the ruling made in *Davis* v. *Metropolitan Ins. Co.*, 161 Tenn., 655, 32 S. W. (2d), 1034, that in contracts of group insurance the insurer and the employer are the original or directly contracting parties, and that the rights of the insured employees are incidental to the primary contract so entered into. But when, as here, the insurer issues its certificates to the employees and the latter contribute a portion of the premium paid by the employer, there arises a definite contractual relation between the insured employees and the insurer, and the certificates become integral parts of the insurance contract. The group policy and the certificate are to be construed and enforced together.

Complainant, in his petition for *certiorari* and assignments of error, assumed that the Court of Appeals had ruled that the chancellor erred in granting the defendant a new trial on the issue of fact submitted to the jury. We do not so interpret the opinion of the Court of Appeals. The opinion refers to the evidence, apparently to ascertain the complainant's contentions, but expressly limited its ruling to the single point involved in the action of the chancellor in dismissing the bill on defendant's motion. The opinion of the Court of Appeals states that the "sole question" presented to that court for determi-

nation was whether the failure of the complainant to furnish proof of disability while the policy was in force is fatal to his suit, and "whether such condition is a condition precedent to the right of recovery under the provisions of the policy and the certificate."

The chancellor's action on the motion for a new trial is not presented to us by assignment of error. The decree to be entered here will reverse the decree of the Court of Appeals and remand the cause to the chancery court of Shelby county for a new trial. The defendant will pay the costs of the appeal and of this court.