**PARKS v. PRUDENTIAL INS. CO. OF AMERICA.**

**Civ. A. No. 1428.**

United States District Court
E. D. Tennessee, S. D.

Feb. 6, 1951.

**On Motion for New Trial March 14, 1951.**

Denman & Massey, Chattanooga, Tenn., for plaintiff.

Chambliss, Chambliss & Brown, Chattanooga, Tenn., for defendant.

DARR, Chief Judge.

This suit was instituted to recover total and permanent disability benefits under a contributory policy of group insurance.

The policy has been in force since November 16, 1921, and the plaintiff became insured thereunder for $2,000 on or about April 6, 1925, and for an additional $2,000 on October 1, 1928.

The policy provides: "This Policy is issued upon the one-year renewable term plan and may be renewed on each succeeding anniversary of its date for successive terms of one year each, upon the payment on or before the date of each renewal of the premium for the amount of insurance to be renewed."

It further provides that at the end of each five-year period the Company reserves the right to adjust the premium rates.

Another clause provides: "The Company *will issue to the Employer for delivery to each person insured under this Policy an individual certificate setting forth the insurance protection to which such person is entitled hereunder* and to whom such insurance is payable" (emphasis added); and a period of thirty-one days was allowed to the certificate holder upon termination of his employment, to convert the insurance to other types of policies without evidence of insurability.

The policy was amended on October 26, 1946, which was not on the anniversary of the policy, to change the five-year period for adjustments of premium rates, and November 16th was established as the annual recurring date on which renewals, adjustments of premium rates or refusal to renew the policy would be made. So far as the proof shows, this amendment was made without notice to plaintiff.

The policy also provides that: "No condition, provision or privilege of this Policy can be waived or modified in any case *except by an endorsement hereon* signed by the President, one of the Vice Presidents,

the Secretary, one of the Assistant Secretaries, the Actuary, the Associate Actuary, or one of the Assistant Actuaries." (Emphasis added.)

The coverage was for optional payments to the beneficiary in case of death of the insured employee; and optional payments to insured in case of total and permanent disability occurring while the policy was in force, and up to the policy limits.

The proof shows that the defendant found the experience under the policy was bad, and the premium rates were changed from time to time in the attempt to save the insurer from loss; and when the increased rate would be found to be more than was adequate, the rate would for the next yearly period be reduced. It resulted that during the life of the policy while the plaintiff was insured, the premium rates were constantly, from year to year, going up and down. The premium on plaintiff's policy was deducted by the employer from salary payments, and the express consent of plaintiff to such changes in premium were not sought or given.

Shortly before November 6, 1947, the defendant notified the employer "that we were going to change again; place a $20 increase." Thereupon, on November 6, 1947, the employer (Police and Fire Departments of the City of Chattanooga) wrote the defendant inquiring whether defendant could "send a representative to Chattanooga to meet with the personnel of the Fire and Police Departments and answer questions regarding Group Insurance Policy."

Pursuant to that letter, representatives of the insurer came to Chattanooga, arriving there on or about November 20, 1947, and a meeting was called of the members of the two departments, broadcast by radio. The plaintiff did not receive notice of the meeting and did not attend.

A majority of those attending the meeting, after a discussion of the premium rates and the coverage of the policy, voted in favor of changing the policy so as to cover the individual employees only for life, with a waiver of premium in case of total disability, by virtue of which instead of requiring an additional premium, the premium was reduced.

The Commissioner at the head of these Departments of the City Government, comprising the group insured, considered that he had authority himself to amend the policy; but he directed that the meeting be called and a vote taken by the employees to ascertain their wishes, it being his intention to follow their wishes.

After the meeting of the employees the Commissioner wrote the defendant the following letter:

"A majority of the members have voted to remove the Total and Permanent Disability Clause from the Group Insurance contract and accept the current policy provisions.

"They desire this change to take effect November 16 and take advantage of the $10.00 a $1000.00 reduction in rate rather than pay the $5.00 a $1000.00 increased rate."

As a result of this letter, the policy contract was entirely rewritten and executed by both parties on May 18, 1948, reciting on its face that the amended policy was to become retroactively effective as of November 16, 1947. As of November 16, 1947, the premium was adjusted to the new rate, but no memorandum of endorsement or other modification was attached to the policy until May 18, 1948.

The new policy omitted the coverage for total and permanent disability except as to waiver of premium on the life coverage.

The plaintiff became totally and permanently disabled on May 20, 1948.

The Insurance Company concedes that plaintiff is covered by the policy for life insurance to the extent of $4000, with full waiver of premium during disability. It contends however that he is not entitled to current disability benefits by reason of the change in policy coverage prior to the date of his disability. The only question, therefore, is whether the plaintiff is affected and bound by the policy changes made on May 18, 1948.

The defendant issued to the plaintiff two certificates, one dated April 6, 1925 for $2,000 and the other dated October 1, 1928 for $2,000, both of which recited that the defendant, "in accordance with and subject

to the terms and conditions of its Group Policy No. 1360, insuring the lives of a group of the employees of City of Chattanooga Fire and Police Departments, has insured the life of Jackson G. Parks," etc.

Each certificate contains the following: "If the said employee, while less than sixty years of age, and while the insurance on the life of said employee under said Policy is in full force and effect, shall become totally and permanently disabled or physically or mentally incapacitated to such an extent that he or she by reason of such disability or incapacity is rendered wholly and permanently unable to perform any work for any kind of compensation of financial value, said amount of insurance will be paid to said employee either in one sum twelve months after the Company has received due proof of such disability or incapacity, or in instalments during five years, the first instalment to be payable three months after the Company has received due proof of such disability or incapacity; in accordance with the provisions of said Policy. The disability benefits will be granted subject to cessation, in accordance with the provisions of the Policy, should the employee recover from such disability or incapacity. Permanent loss of the sight of both eyes or loss by severance of both hands above the wrists, or of both feet above the ankles, or of one hand and one foot, will be considered total and permanent disability or incapacity within the meaning of the provisions of said Policy."

The defendant did not deliver any new certificates to plaintiff after it was agreed to change the coverage on May 18, 1948; and plaintiff was not notified that the policy coverage was changed or that the certificates, which had been furnished to him, were no longer in force.

What then is the effect of the amendment to the policy made on May 18, 1948, which was not the anniversary date when modification of renewal provisions was authorized? The retroactive provision, giving the amendment an effective date of November 16, 1947, cannot be recognized in view of the policy provisions above quoted that no modification can be made in the policy provisions or privileges "except by an en-

dorsement hereon". The question is thus further narrowed as to whether the plaintiff is bound by an amendment made without notice to him on a date other than the anniversary date by mutual agreement of the employer and insurer.

In Thompson v. Pacific Mills, 141 S.C. 303, 139 S.E. 619, 55 A.L.R. 1237, where a similar policy of group insurance was taken out for the term of one year, renewable from year to year, at option by paying the yearly premium, it was held that the policy having been extended beyond the yearly period, an agreement would be implied that it would remain in full force and effect for the full period of another year, and could not be cancelled within such period except upon the consent of the holders of beneficial certificates.

The authorities are not in harmony as to the effect of a cancellation or modification of a policy made under these circumstances by the sole act of the employer and the insurer. In some cases it is considered important that the insurance is non-contributory and furnished gratis to the employees. Some cases hold that the consent of the employee is required, and others that mere notice to the employee is sufficient. There is a valuable annotation of the cases on the subject at 142 A.L.R., pp. 1288–1301.

In Tennessee the courts have recognized that one holding a beneficial certificate under a group policy, for which he has paid all or a portion of the premium, has a definite contractual relation with the insurance company. Baugh v. Metropolitan Life Ins. Co., 173 Tenn. 352, 355, 117 S.W.2d 742. And while the general rule is recognized in Tennessee that the contracting parties in a group policy of insurance are primarily the employer and the insurance company, and that the cancellation or recession of the policy by mutual consent of those parties terminates the rights of the beneficiary thereunder, Davis v. Metropolitan Life Ins. Co., 161 Tenn. 655, 32 S.W.2d 1034, nevertheless a distinction is made in those cases where, as here, "the insurer issues its certificates to the employees and the latter contribute a portion of the premium paid by the employ-

er," and in such cases "there arises a definite contractual relation between the insured employees and the insurer, and the certificates become integral parts of the insurance contract. The group policy and the certificate are to be construed and enforced together." Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn. 513, 527, 71 S.W.2d 1059, 1064.

It was shown in the Davis case, supra, that the certificate holder had notice. Cases recognizing that the employee is entitled to notice of termination of the group insurance and has a special contract by virtue of his certificate and which seem in line with the Tennessee cases of Smithart v. John Hancock Mut. Life Ins. Co. and Baugh v. Metropolitan Life Ins. Co., supra, are: Poch v. Equitable Life Assur. Soc., 343 Pa. 119, 22 A.2d 590, 142 A.L.R. 1279; Hinkler v. Equitable Life Assur. Soc. of U. S., 61 Ohio App. 140, 22 N.E.2d 451; Butler v. Equitable Life Ins. Soc., 233 Mo. App. 94, 93 S.W.2d 1019; Emerick v. Connecticut General Life Ins. Co., 120 Conn. 60, 179 A. 335, 105 A.L.R. 413; Johnson v. Inter Ocean Cas. Co., 112 W.Va. 396, 164 S.E. 411; Deese v. Travelers Ins. Co., 204 N.C. 214, 167 S.E. 797.

█ It cannot be said that the plaintiff had notice of the amended policy solely by virtue of the changed deduction from his monthly payroll check. There had been so many changes prior thereto that did not affect the coverage of the policy, that this change could not be considered as giving him notice of the changes here involved.

█ Another provision of the group policy which seems to settle the rights of the parties beyond doubt in favor of the plaintiff, is that clause quoted above to the effect that the Insurance Company "will issue to the employer to be delivered to the insured an individual certificate setting forth the insurance protection to which such person is entitled hereunder". This language is not ambiguous. It is definite and positive. The only certificates shown to have been issued by the defendant which were delivered to the plaintiff, are the two certificates providing benefits for total and permanent disability, and on which this suit is predicated. By the terms of the group policy the defendant has said to the plaintiff "these two certificates represent the protection and benefits to which you are entitled under the group policy". The Court feels that no other interpretation could be given to the contract, particularly when the policy changes were not made on the policy anniversary and were made without notice of any kind to plaintiff.

█ Where the certificate is a part of the group policy contract, in case of a conflict between them the terms of the certificate will control as between the employee and insurer. 44 C.J.S. Insurance, § 299(b) note 84, p. 1204.

█ A full consideration of the situation between the parties as reflected by the proof indicates a legitimate controversy whereby there was not a refusal to pay said loss which was not in good faith and, therefore, no right to penalty is set up. Tennessee Code, § 6434.

There will be a judgment for the plaintiff in accordance with the terms of payment contained in the policy and certificates, but without penalty.

## On Motion for New Trial

The defendant moves for a new trial and for a judgment in its favor.

The ground of the motion is that the plaintiff is "bound by the policy changes made in November, 1947, at the end of a policy year and before the defendant would agree to continue the insurance coverage for another year."

The defendant in its brief asserts that the insurance *expired* on November 16, 1947, because of its unwillingness to continue with its current provisions.

This is an erroneous assumption. The insurance did not expire and was not cancelled. To the contrary it continued in force and so far as the record shows the premiums continued to be paid without interruption.

There was no change made in the policy in November 1947, at the end of the policy year, as claimed. After November 16, 1947, the employer, without the knowledge

of the plaintiff, entered into negotiations with the defendant on the question of increased premium. The result of the negotiations was that, on November 21, 1947 instead of consenting to an increase of the premium, the employer agreed to permit a change in coverage so as to remove the total and permanent disability clause. That change was not made effective until May 18, 1948. The agreement was made in a letter of the Commissioner of Fire and Police of Chattanooga (the employer) who wrote the defendant on November 21, 1947: "A majority of the members have voted to remove the total and permanent disability clause from the Group Insurance contract and *accept the current policy provisions*. They desire this change to take effect November 16 and take advantage of the $10.00 a $1000.00 reduction in rate rather than pay the $5.00 a $1000.00 increased rate." (Emphasis added.) When the amendments were made the "current policy provisions" were not maintained. Among other additions were the omission of provisions for employees' certificates and changes as to supplementary insurance, so that the agreement of May 18, 1948 was not the agreement tentatively made on November 21, 1947.

No change was made in the policy *by endorsement,* as required by the paragraph of the policy headed "Modifications, etc.", until May 18, 1948. The provisions of this paragraph should apply to the insurer as well as to the insured.

There is no basis for a claim that the amendments were made on the anniversary date (November 16, 1947) as required. The retroactive provisions of the May 18, 1948 amendment could not relate to November 16, 1947, because no agreement of any kind existed on November 16. The tentative agreement was not made until November 21, 1947.

The defendant in its brief says: "If, as the Court has suggested, the old contract had entered a new year and had continued under its old terms until May of 1948, we do not believe that a change made at that time, without notice to the insured, would be binding on him."

There can be no doubt that the old contract entered a new year unchanged; and that any changes later made were without notice to the plaintiff. It cannot be seriously urged that the old policy expired on November 16, 1947. There was no hiatus in the coverage. Neither was there an amendment on that date. In any event, the old policy terms and provisions went into the next year without amendment. While it is the opinion of the Court, as set out above, that the amendment could not be effective until May 18, 1948, nevertheless, the defendant itself claims no agreement to amend until November 21, 1947, which was after the anniversary date.

Effect must be given to the holdings of the Tennessee Court in Baugh v. Metropolitan Life Ins. Co., 173 Tenn. 352, 355, 117 S.W.2d 742; and in Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn. 513, 527, 71 S.W.2d 1059, wherein it was ruled that where the employee paid a portion of the premium (in the present case the employee paid it all) there was a definite contractual relation between the insured employee and the insurer. Such being the law controlling the rights of the parties, the plaintiff's "contractual relation" must be recognized; and to permit the defendant to change the contract in a manner not authorized by the contract and without notice to the employee, would be in utter disregard of the "contractual relation".

It was further a part of the "contractual relation" that "the company will issue to the employer for delivery to each person insured under this policy an individual certificate setting forth the insurance protection *to which such* person is entitled hereunder." (Emphasis added.)

The two certificates sued on are the only ones delivered to the plaintiff. The defendant shows no reason why it should not comply with this provision of the contract, viz., that these certificates "set forth the insurance protection to which the plaintiff is entitled". Had the contract been effectually changed as to the certificate holder, notice of the modification or cancellation of the certificates would have been given.

Motion overruled.