PRESLEY PICKETT, dba Home Food Service,
Appellee-Complainant

*v.*

NATIONWIDE ACCEPTANCE COMPANY OF CHATTANOOGA, dba
Nationwide Finance Company, Appellant-Defendant.

436 S.W.2d 442.

(*Knoxville,* September Term, 1968.)

Opinion filed January 17, 1969.

H. L. SMITH, JR., and JAMES C. LEE, Chattanooga, for
appellee-complainant.

SELMA CASH PATY, Chattanooga, for appellant-defend-
ant.

424

Mr. Justice Dyer delivered the opinion of the Court.

This case involves construction of a written contract. We will refer to the parties in this opinion as they appeared in the trial court; that is, Presley Pickett, dba, Home Food Service, as complainant, and Nationwide Acceptance Company of Chattanooga, dba, Nationwide Finance Company, as defendant.

Complainant is in the business of selling home freezers on title retention installment contracts. Defendant is in the business of purchasing such contracts. These parties entered into a written agreement here under consideration with parts pertinent to the issue raised being as follows:

The agreement on a printed form with spaces for dates, names, etc., is headed "Master Dealer Agreement Non-

recourse." Paragraph 1 states the purpose of the contract and also gives the defendant the right to reject any of these contracts. Paragraph 2 states in consideration of defendant purchasing these contracts "without recourse" complainant warrants signature, delivery, title, etc. Paragraph 3 states in the event of breach of any of these warranties the waiver of recourse is abrogated and the complainant upon demand of defendant agrees to pay in cash any loss or damage with respect to said contract. Under paragraph 4 complainant guarantees satisfactory performance of the merchandise for the full time of the service or warranty or not less than ninety days, and in the event the merchandise is rejected or repossessed by defendant within ninety days, complainant agrees to repurchase this contract. Paragraphs 5, 6, and 7 are as follows:

5. At the time of purchase of any contract You may withhold an amount equal to ten per cent (10%) of the net unpaid balance less carrying charges of each contract so purchased. The amounts retained by You shall comprise a Reserve Fund to be used as security for the Seller's obligations herein and will be refundable in accordance with the following paragraph 6.

6. Twelve (12) months after date of this Agreement and thereafter at semi-annual intervals on March 1st and September 1st of each year, the excess net of losses in Seller's Reserve Account over ten per cent of the total unpaid balances of all notes then held by you shall be refunded to Seller; provided, however, you may withhold payment of such reserves in the event of bankruptcy or insolvency of Seller or of liquidation or sale of Seller's business, either voluntarily or otherwise, or in event Seller discontinues the sale of notes to you,

and in the event of any of such contingencies you may withhold the full amount of such reserves until all of the notes, including any extensions or renewals thereof have been paid in full by the makers; in addition thereto you may retain and apply all or any part of such reserves to pay and satisfy any actual or contingent indebtedness of Seller to you.

You shall, in your sole discretion and judgment, have the right to determine which contracts shall be considered losses, or in default under this Agreement, and to determine those contracts and the amounts thereof which shall be charged against said Reserve Fund. Your remedy to apply money from the Reserve Fund is cumulative with any other remedy that you might have and you are not obligated to make any application from said Reserve Fund to any contract before proceeding with any other right or remedy. In the event of repossession Seller shall have the option of paying the contract balance in full, or may authorize you to sell the merchandise and apply the net proceeds to the account, the balance, if any, on such contract to be charged against the Reserve Fund.

In the event a note, or any renewal or extension thereof, is fully paid by charging the contract balance then due against Reserve Fund you shall reassign such note to Seller, if so requested in writing by Seller.

You shall have the right to charge said Reserve Fund against any loss occurring on any contract which has been refinanced by any of your associate or subsidiary companies to the same extent and in the same manner as if said contract were at said time owned and held by you; provided however, such liability shall not exceed

the unpaid balance then due at the time of such refinancing.

7. Notwithstanding anything to the contrary contained herein, the Seller agrees for the period starting with the signing of this agreement up to the time a Reserve Fund accumulation is reached of ten per cent (10%) of the outstanding contract balances, to pay You in cash immediately upon demand without charge or depleting the Reserve Fund, any contract that is considered a loss. It is understood that You have the right in Your sole discretion to determine which contracts are considered losses or in default under this agreement. When the Reserve Fund exceeds Ten per cent (10%) of the outstanding contract balances, any designated loss thereafter will be charged against the Reserve Fund in accordance with paragraph 6.

The parties stipulated the question for decision to be as follows:

Under the terms of the non-recourse agreement under which the parties were operating, did the defendant have the right to charge bad debt losses against the dealer reserve?

Complainant's position is that the reserve fund created by paragraph 5 only applies to any losses sustained by defendant due to the warranties in paragraph 2 and 3 or the failure of satisfactory performance in paragraph 4. Complainant insists the language of paragraph 5 is clear, that this reserve fund is ''to be used as security for the seller's obligation herein.'' That since the general tenor of the agreement was for the sale and purchase of these contracts without recourse then complainant has no obligations under this agreement other than those con-

tained in paragraphs 2, 3, and 4. Complainant in his brief states the following language from the chancellor's memorandum fairly states the issues and correctly disposes of the controversy:

> While in a most conspicious manner and in bold type the contract is made to give the appearance that the discounting of notes or contracts made pursuant to its terms will be without recourse, then—buried away half way down the contract in very fine print—there is a provision, ''You shall, in your sole discretion and judgment, have the right to determine which contracts shall be considered losses, or in default under this Agreement, and to determine those contracts and the amounts thereof which shall be charged against said Reserve Fund.'' This provision is in conflict with the very purpose of the agreement—to purchase the freezer contracts without recourse. If it had the words, ''limited non-recourse,'' in the bold type, it would have put complainant on notice to beware of the fine print.

> Taking the contract as a whole, it appears to the Court that it was the honest intention of the parties that it was to be a non-recourse agreement, without any attempt to utilize the reserve fund for satisfying obligations created unless by breach of warranty under Paragraph 2, in which event and only in which event the non-recourse endorsement could be set aside. (Chancellor's Memorandum).

The chancellor agreed with the complainant finding the language in paragraphs 6 and 7 allowing defendant to charge general losses on the purchased contracts, as opposed to losses sustained under paragraphs 2, 3, and 4 against the reserve fund to be repugnant to the principal

purpose of the agreement; that is, the purchase of these contracts without recourse. The chancellor cited the following language from *Smithart v. John Hancock Mutual Life Insurance Co.*, 167 Tenn. 513, 71 S.W.2d 1059 (1934):

> If repugnant clauses cannot be harmonized so as to give effect to both, and one is subordinate to the principal purpose and intent of the contract, a court will disregard it rather than permit it to destroy and nullify the contract. 167 Tenn. at 525, 71 S.W.2d at 1064.

Defendant takes the position as to any losses it suffers under paragraphs 2, 3, and 4, the complainant agrees to pay in cash regardless of the reserve fund or as a matter of argument, whether there be any reserve fund or not; that this reserve fund is refunded or debited under the terms of paragraphs 6 and 7 of the agreement. The gist of this argument is that complainant under this agreement does limit his liability on the contracts purchased by defendant to the amount of the reserve fund.

Under this agreement by the language used in paragraph 2 we agree with the chancellor the general tenor of this agreement was for the sale of these contracts by complainant to defendant without recourse. Paragraph 2 simply states such. The term "without recourse" simply means upon the transfer of a contract from complainant to defendant complainant had no further liability thereon. The complainant then does assume certain obligations in regard to possible losses on these contracts under paragraphs 2, 3, and 4, even though they were transferred without recourse.

The agreement next sets up a reserve fund composed of assets belonging to complainant. The purpose of this

fund is to give defendant security in enforcement of complainant's obligations contained in the agreement. Under the agreement after transferring these contracts without recourse the only obligation complainant undertakes are those in paragraphs 2, 3, and 4, and no doubt any losses suffered thereunder could be charged against this reserve fund.

We agree with the defendant the language in paragraphs 6 and 7 is clear and unambiguous and that under these paragraphs defendant may, at its sole discretion and judgment, charge any losses on these contracts defendant may suffer, whether such arises under paragraphs 2, 3, and 4, or not. The fact this language in paragraphs 6 and 7 is clear and unambiguous is not the controlling point in the case. The controlling point is the fact this language in paragraphs 6 and 7 is in conflict with other provisions of the agreement, particularly the agreement to sell and purchase these contracts without recourse and, in fact, does create an ambiguity in the agreement. On the points stipulated by the parties to be the only point at issue there is a difference in the agreement to sell and purchase evidence of indebtedness without recourse and an agreement to sell and purchase such without recourse except as to the amount of the reserve fund.

This agreement was prepared by defendant. We do not think the chancellor was in error in construing the ambiguity in this agreement in favor of the complainant.

The judgment is affirmed.

BURNETT, CHIEF JUSTICE, and CHATTIN, CRESON and HUMPHREYS, JUSTICES, concur.