IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 12, 2003 Session

## DLLP, LLC, dba BIG NINE PRODUCTIONS v. INTERNATIONAL CREATIVE MANAGEMENT, INC., aka ICM, ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 00C1945     Samuel H. Payne, Judge**

**FILED JUNE 25, 2003**

**No. E2002-02452-COA-R3-CV**

DLLP, LLC, dba Big Nine Productions ("DLLP") sued International Creative Management, Inc., aka ICM ("ICM") and Rock On Tours, Inc. (collectively "the defendants") for damages and other relief arising out of the alleged failure of the defendants to follow through with a concert featuring the defendants' principal, a musical group known as the Moody Blues. The defendants moved the court to compel arbitration under an alleged agreement providing for arbitration in New York City. The trial court ordered arbitration, but decreed that it would be conducted in Chattanooga. The defendants appeal, arguing that the trial court was without authority to order arbitration other than in New York City. By way of a separate issue, the appellee, DLLP, contends that the trial court ordered "non-binding" arbitration and that it erred in doing so in the absence of the parties' consent, said consent being required by Tenn. Sup. Ct. R. 31, Sec. 3(d). It seeks an outright reversal of the court's order. We hold that the trial court ordered "binding" arbitration; that such arbitration was required under the terms of the parties' agreement; and that the trial court erred in failing to order that the arbitration would be conducted in New York City. Accordingly, we modify the trial court's order. As modified, the order is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Robert E. Cooper, Jr., Samuel L. Felker, and Andrea T. McKellar, Nashville, Tennessee, attorneys for appellants, International Creative Management, Inc., aka ICM, and Rock on Tours, Inc.

H. Wayne Grant, Harry Cash, and Steven W. Grant, Chattanooga, Tennessee, attorneys for appellee, DLLP, LLC, dba Big Nine Productions.

**OPINION**

I.

DLLP alleged in the amended complaint that it negotiated with the defendants regarding DLLP's desire to promote a Moody Blues concert in Chattanooga. Initially, DLLP proposed that the concert be held at Finley Stadium on the campus of the University of Tennessee–Chattanooga. The amended complaint sets forth the following additional operative facts:

> Throughout March and April 1999, [DLLP] and Defendants negotiated the terms of the parties' agreement. On March 22, 1999, [DLLP's broker] faxed to [the defendant] ICM's representative, Terry Rhodes, a letter setting forth the proposed terms of the Chattanooga concert. On April 21, 1999, [DLLP's broker] faxed a second letter to Terry Rhodes requesting that [the defendant] ICM approve the concert in Chattanooga. . . .
>
> Pursuant to the terms of the document, the concert was to be held on August 19, 1999. [DLLP] agreed to pay [DLLP's broker] $10,000 for brokering the deal between [DLLP] and ICM. [DLLP] further agreed to pay the Moody Blues $100,000 or fifty percent (50%) of box office gross proceeds after taxes. [The defendant] ICM, as agent[] of the Moody Blues, was to receive $50,000 immediately and the balance was to be payable on the night of the performance. [DLLP] was to be responsible for all other production and promotion costs.
>
> Although numerous documents outlining terms of the negotiation were exchanged between the parties, no formal contract was ever executed between the parties.
>
> Sometime between April 30, 1999, and May 6, 1999, [DLLP] was advised that Finley Stadium would no longer be available for the Moody Blues concert. [DLLP] contacted other possible venues, and was able to secure Engel Stadium as a [sic] alternative venue. [DLLP] notified Defendants of the new venue, and *Defendants approved the change of venue.*
>
> On May 6, and May 10, 1999, [DLLP] wired a total of $60,000 to [the defendant] ICM and [DLLP's broker]. [DLLP] then undertook to perform all the tasks which were necessary to promote and produce the Moody Blues concert, including, but not limited to, securing contracts with representatives of the Chattanooga Symphony and Opera Association, the Johnson Group; for advertising and

marketing, the University of Tennessee box office; for the production and sales of tickets, the Apex Electric Company, Inc.; for electrical stage work, the Chattanooga Tent Company, Advantage Printing and Mailing Services, Engel Stadium, and other companies related to producing and promoting the concert.

(Paragraph numbering in original omitted) (emphasis added). The amended complaint goes on to allege that the defendants refused to allow the Moody Blues to perform in Engel Stadium because they objected to the group performing in a baseball stadium. The concert was never held. DLLP alleges breach of contract, unjust enrichment, conversion, fraudulent misrepresentation, negligent misrepresentation, and breach of warranty. It seeks money damages and other relief.

The defendants filed a motion to compel arbitration, taking the position that there is a writing which memorializes the parties' agreement and that this writing contains a provision requiring arbitration in New York City under the laws of the state of New York.

Following a number of hearings, the trial court entered an order on September 3, 2002, which, as pertinent to the issues on this appeal, decrees that

> the foregoing case shall be submitted to arbitration under the laws of arbitration of the State of Tennessee, said arbitration to be conducted in Chattanooga, Tennessee by an arbitrator selected by the parties. If the parties are unable to agree on the identity of an appropriate arbitrator, the Court shall appoint a [sic] an arbitrator upon being notified by the parties that the arbitrator cannot be selected by agreement.

## II.

The defendants' brief raises the following issue:

> Was there a contract between the parties in which they agreed to arbitrate in New York City any disputes between them arising out of their contractual relationship?

DLLP contends that the trial court ordered non-binding arbitration and that it had no authority to do so in the absence of the consent of the parties. It relies upon Tenn. Sup. Ct. R. 31, Sec. 3(d).

## III.

The parties have a sharp disagreement as to exactly what the trial court ordered in this case. DLLP contends that the court ordered *non-binding* arbitration, while the defendants assert that the court decreed *binding* arbitration. In support of their respective positions, both parties direct us to

certain cryptic comments the trial court made during the three hearings in the instant case. These comments, some of which tend to support each party's side, are not controlling. "A Court speaks only through its written judgments, duly entered upon its minutes." *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. Ct. App. 1979). When interpreting a trial court's decree, we cannot rely upon comments made from the bench when those comments were not incorporated into the court's order. Rather, we must look only to the language of that order, at least to the extent that the language is clear and unambiguous.

In the instant case, the trial court decreed that the case "be submitted to arbitration." Since the parties did not consent to non-binding arbitration pursuant to Tenn. Sup. Ct. R. 31, Sec. 3(d), the trial court was without authority to order such arbitration. We can only conclude from this that the trial court ordered traditional, *i.e.*, binding, arbitration. We find this issue in favor of the defendants.

IV.

The trial court decided this case based upon the pleadings, affidavits, and other papers filed by the parties. The court did not hold an evidentiary hearing on the issue of whether the parties had agreed to arbitrate any disputes arising out of their contractual relationship. Accordingly, the trial court's decision on this issue is in the nature of summary judgment and we will review it as such.

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In deciding this case, we "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993). Since a motion for summary judgment presents a pure question of law, our review is *de novo* with no presumption of correctness as to the trial court's judgment. *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 44 (Tenn. Ct. App. 1993). We must decide anew if summary judgment is appropriate.

V.

The question for us is whether the facts show, without dispute, that there was a contract between DLLP and the defendants that included an agreement to arbitrate; and, if so, whether arbitration is required to be held in New York City according to the terms of that contract.

In its brief, DLLP contends that it received a proposed written contract from the defendants at the end of April, 1999. It is not disputed that the proposed contract contains an arbitration provision in the following language:

> Any claim or dispute arising out of or relating to this agreement or the
> breach thereof shall be settled by arbitration in New York, New York
> in accordance with the rules and regulations then obtaining of the

American Arbitration Association governing three-member panels. The parties hereto agree to be bound by such award in such arbitration and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Within the next two weeks, DLLP made some changes to the contract, most notably the change in venue from Finley Stadium to Engel Stadium, signed the proposed contract that the defendants had sent to it, and forwarded the two-page contract with the Engel Stadium addendum to the defendants. DLLP asserts that its changes constituted a counteroffer. Approximately two months later, the defendant ICM sent a letter to DLLP, which referenced an earlier conversation in which DLLP agreed to wire a $50,000 payment to ICM. DLLP argues that this letter is proof that the defendants never accepted DLLP's counteroffer. Hence, so the argument goes, the three-page writing, a copy of which is attached as an appendix to this opinion, is not the parties' agreement.

The position taken by DLLP on this appeal – that the writing incorporating the change to Engel Stadium was never accepted by the defendants – is diametrically opposed to its position asserted in the amended complaint. In that document, DLLP clearly alleges that it "notified Defendants of the new venue, and *Defendants approved the change of venue*." (Emphasis added). The only fair reading of this allegation, when considered in the light of other facts that are not in dispute, is that the three-page document attached to this opinion was signed by DLLP, mailed to the defendants, and accepted by them. Under the circumstances of this case, it does not matter that it was not signed by the defendants. *See Carter v. Richards*, C/A No. 116, 1990 WL 209330, at *3 (Tenn. Ct. App. W.S., filed Dec. 12, 1990) ("When a contract between two parties which is contemplated to be signed by both is reduced to writing and signed by only one of them, but accepted by the other, it becomes in contemplation of the law, a written binding contract on both.") *quoted in Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 350 (Tenn. Ct. App. 1999).

It is well-established that a party will not be permitted to take a position on appeal that is contrary to a position that it took at trial. *Clement v. Nichols*, 186 Tenn. 235, 237, 209 S.W.2d 23, 24 (1948); *Estate of Schultz v. Munford, Inc.*, 650 S.W.2d 37, 40 (Tenn. Ct. App. 1982). That is precisely what DLLP is attempting to do in this case. It is clear, under Tennessee law, that DLLP cannot reverse its trial position on this appeal. *Id.*

The fact of the matter is that DLLP pursued inconsistent positions at trial and is continuing to attempt to straddle these positions on appeal. Our analysis starts with the recognition that DLLP cannot escape the fact that the addendum changing the venue to Engel Stadium is central to their claim for relief against these defendants. This is obviously what prompted its assertion that the addendum was "approved" by the defendants; but this assertion proves too much. This is because the addendum is inextricably connected to the two-page document that its representative signed and sent to the defendants. Simply stated, the addendum upon which DLLP relies is clearly an addendum to the two-page contract originally proposed by the defendants. That signed document brings into

play the arbitration agreement. Try as it might, DLLP cannot rely on the addendum and, at the same time, disavow the agreement to arbitrate.

DLLP attempts to make out a genuine issue of material fact. It claims that three separate affidavits by one of the defendants' witnesses reflect contradictory positions. In his initial affidavit filed in the trial court, Terry Rhodes, an agent of the defendant ICM, attached an *unsigned* copy of the first two pages of the three-page document attached as an appendix to this opinion. He asserted that this was the agreement between the parties. In his second affidavit, he attached the three-page signed agreement, including the addendum regarding Engel Stadium, and said that it reflected the agreement of the parties. Even assuming these two affidavits[1] contain conflicting statements, they address a matter that is no longer material. The parties have moved beyond this point. This is because DLLP does not dispute that it transmitted the attached signed three-page document to the defendants; it only contends that its transmission constituted a counteroffer that was not accepted. As we have previously noted, DLLP is precluded from taking this position. In any event, the only material issue raised by DLLP pertaining to the arbitration provision is whether the three page document in which it is found was accepted by the defendants. Any inconsistency in the Rhodes affidavits is rendered immaterial by DLLP's position. Hence, it has no bearing upon the issue of summary judgment.

As DLLP's only basis for contending that there was no contract between the parties is premised upon an unaccepted counteroffer, which we have now found to be without merit due to the legal effect of the allegations of the amended complaint and the position taken by DLLP in the trial court, we find that there was indeed a contract between DLLP and the defendants. Furthermore, we find that this contract does contain an agreement to arbitrate any disputes in New York, New York. Therefore, the trial court erred in ordering the parties to arbitrate in Chattanooga, Tennessee. "A court is not at liberty to make a new contract for parties who have spoken for themselves." *Smithart v. John Hancock Mut. Life Ins. Co.*, 167 Tenn. 513, 525, 71 S.W.2d 1059, 1063 (1934); *see also Jaffe v. Bolton*, 817 S.W.2d 19, 25 (Tenn. Ct. App. 1991); *Carrington v. W. A. Soefker & Son, Inc.*, 624 S.W.2d 894, 897 (Tenn. Ct. App. 1981). Accordingly, we modify the trial court's order to reflect that the parties are to submit to arbitration in New York, New York, as contemplated by their contract.

VI.

The order of the trial court is affirmed as modified. This case is remanded for enforcement of the trial court's modified order, pursuant to applicable law. Costs on appeal are taxed to the appellee, DLLP, L.L.C., dba Big Nine Productions.

---

[1]In a third affidavit, Rhodes asserted that he attached the unsigned contract to the first affidavit because he was then unable to find the agreement signed by DLLP's representative. When he found the signed three-page contract, he attached it to the second affidavit.

_____
CHARLES D. SUSANO, JR., JUDGE