## ROOD v. NATIONAL CASUALTY CO.

1. Appeal and Error—Abandonment of Defenses.

   In action under group insurance policy for sickness benefits, defense that plaintiff failed to give insurer notice of claim within 15 days of the beginning of the disability as required by the policy will be deemed to be abandoned, where, notwithstanding trial court mainly upon such ground denied plaintiff the right to recover, the question is not raised in defendant's counter-statement of questions involved, nor argued in its brief, but is expressly waived in its brief.

2. Insurance—Waiver of Defenses—Group Policy—Sickness Benefits.

   In action for sickness benefits under group insurance policy, where insurer denied liability previous to time action was

started on the ground that insured had failed to give insurer notice of disability within 15 days from the beginning of the disability and never theretofore asserted as a defense that insured's illness did not require the regular attendance of a physician or that insured did not give insurer affirmative proof of the illness within three months after termination of the period for which the company was liable, the insurer's course of conduct amounted to a waiver of such defenses.

3. SAME—SICKNESS BENEFITS—AFFIRMATIVE PROOF OF LOSS—WAIVER—INCONSISTENT CONDUCT.

Insurer's claim that insured failed to furnish insurer with affirmative proof within three months after the termination of the period for which it was liable for sickness benefits *held,* without merit, where, if "affirmative proof" means notice of the disability, the insurer has abandoned the defense, and, if "affirmative proof" be deemed analogous to proof of loss, the insurer has waived the defense by its course of inconsistent and misleading conduct in disclaiming liability on other grounds.

4. SAME—SICKNESS BENEFITS—CHRONIC RECURRENT APPENDICITIS.

Evidence in action for sickness benefits under group insurance policy *held,* such as fairly to establish that plaintiff was wholly and continuously disabled and prevented from performing duties pertaining to his occupation as an assistant 4-H club leader and that his illness was such as to require the regular attendance of a legally qualified physician or surgeon where testimony discloses various consultations with physicians and hospitalizations until appendectomy was performed, after which a satisfactory recovery was made.

5. SAME—RENEWAL PREMIUM—SICKNESS BENEFITS—DAMAGES.

Insured was entitled to sickness benefits for period of disability which began while policy was in force notwithstanding failure to pay renewal premium when due, but, where record fails to disclose when disability ended, judgment for insurer is set aside and case remanded for entry of judgment for insured upon further proofs to compute damages.

Appeal from Marquette; Bell (Frank A.), J. Submitted October 11, 1940. (Docket No. 49, Calendar No. 41,200.) Decided March 11, 1941.

Assumpsit by Clare Alfred Rood against National Casualty Company for sick benefits claimed under

a group insurance policy. Judgment for defendant. Plaintiff appeals. Reversed and remanded for entry of judgment for plaintiff, upon further proofs to compute damages.

*George C. Quinnell,* for plaintiff.

*Eldredge & Eldredge (Walters & Head* and *Nathan R. Berke,* of counsel), for defendant.

BOYLES, J. This is an action for sick benefits claimed to have accrued to plaintiff under a policy issued by defendant on February 24, 1936. The policy is one of a group issued under and subject to the terms of a master policy covering employees of the United States department of agriculture. The material provisions of the policy as applied to the case at bar are as follows:

"THE  "This certificate insures against—
INSURING * * * (2) disability resulting from sick-
CLAUSE ness during the term of this certificate,
   hereinafter referred to as 'such sick-
"PART II. ness', * * *
    "SICKNESS INDEMNITY

"If such sickness shall wholly and continuously disable and prevent the insured from performing any and every duty pertaining to his or her occupation and shall require the regular attendance of a legally qualified physician or surgeon, the company will pay indemnity for the number of consecutive days commencing with the 8th day of disability at the rate per week stipulated in the insured's application herefor, but not to exceed 52 consecutive weeks."

In the court below, the defendant claimed (1) that notice of disability was not given to the company within 15 days of the beginning of disability as pre-

scribed by the contract; and (2) that affirmative proof was not given to the company within three months after the termination of the period for which the company was liable. The material provisions of the policy as to notice and affirmative proof are as follows:

"(1) No claim hereunder shall be valid unless within 15 days of the beginning of disability, written notice with full particulars and full name and address of the insured employee, is given to the company of any accident and injury or illness for which claim is made, nor unless thereafter affirmative proof is given to the company at its home office in Detroit, Michigan, or to the authorized representative of the company at Washington, D. C., within three months after the termination of the period for which the company is liable."

The case was tried by the court without a jury. The court, in an exhaustive opinion, found that the plaintiff failed to give the company notice of claim within 15 days of the beginning of disability; and, mainly upon that ground, denied plaintiff the right to recover. In this Court, the defendant expressly abandons this defense. This question is not raised in defendant's counterstatement of the questions involved, nor argued in defendant's brief in which the defendant waives the same by stating:

"No question is raised on the sufficiency or the timeliness of the preliminary notice of claimed disability."

Defendant relies upon the claim that the plaintiff did not furnish the defendant with affirmative proof within three months after the termination of the period for which the company is liable.

Plaintiff was an assistant 4-H club leader employed by Michigan State College and stationed at

Marquette. He first felt symptoms of illness during August, 1936. He consulted a physician a number of times during September and October, developed more serious symptoms toward the last of October and was confined for several days to his room at a hotel. About November 1st, he went to the Henry Ford hospital in Detroit for examination, remaining three or four days. He was there advised that he should take a long period away from his present work. He returned to Marquette, continued to work for a time, and on November 27th notified the defendant that it would be necessary for him to leave his work and inquired as to his disability payments under the policy. Defendant provided him with claim forms which plaintiff filled out and sent to defendant on December 3d. On December 19th, plaintiff left his employment, shortly afterward purchased a house trailer, and in company with his wife went South, traveling to Mexico where he remained until April 3d. Plaintiff drove the car part of the time on the trip. As to his condition, he testified:

"My complaint, until I returned from the Southwest to Michigan, is that I experienced abdominal pain which I had for a long time, and resulting in extreme exhaustion so that I was only good for short periods of time."

Their trip took them to Hollywood where on May 11th plaintiff was examined by a physician at the request of another company in which he held a health policy. His illness was there diagnosed as chronic recurrent appendicitis and anxiety neurosis and he was advised to have his appendix removed. He returned to Michigan and had an appendectomy performed in Ford hospital about June 15th, after, which his recovery was satisfactory.

Numerous exhibits in the record disclose the grounds on which the company denied liability. The renewal premium on the policy was due February

24th. It is undisputed that plaintiff had made arrangements at his Michigan address to take care of the premium when due and that a premium statement was not received at his Michigan address. On April 9th, ascertaining that the premium had not been paid, plaintiff inclosed a check to defendant for the same. On April 22d, defendant company wrote plaintiff that it would not be able to continue his risk for the insurance and returned his check. Considerable correspondence ensued, the company insisting that the policy had lapsed for nonpayment of premium, both parties evidently assuming that if the policy lapsed on February 24th it would bar the plaintiff's right to claim benefits for his sickness beginning some months previously while the policy was unquestionably in effect. On July 21st, about a month after plaintiff's appendectomy at Ford hospital, plaintiff wrote defendant stating that the company seemed determined that the policy lapsed February 24th and stating that the plaintiff should at least be entitled to indemnity from the time he gave up work until the date the policy lapsed. The defendant on July 24th wrote the plaintiff with reference to the claim that plaintiff was at least entitled to indemnity until the policy lapsed and for the first time the company then made the claim that plaintiff had failed to give notice of disability:

"We have no record of any claim having been presented to us between December 19th and February 24th, when the policy was not in effect, therefore, we do not feel that a claim at this time would be in order."

This reason for refusing to recognize liability was reiterated by defendant on August 4th in a letter wherein defendant's claim adjuster stated:

"You were correctly advised by Mr. Curry of our Washington office in his letter of July 24th regard-

ing this claim, that the company received no notice whatsoever of Mr. Rood's disability, or that he desired to present a disability claim previous to the expiration of the insurance."

On August 7th, defendant's attention was directed by plaintiff to the fact that on November 27th plaintiff had written the defendant as to his disability and on December 3d had sent the defendant the preliminary notice of sickness on the form provided by defendant. On August 10th, defendant acknowledged having received these notices and reiterated defendant's claim "we are justified in anticipating that a policyholder will notify us when disability commences." Plaintiff started suit December 8, 1937.

It is apparent from the above that the defendant's sole ground for denying liability previous to the time suit was begun was that the plaintiff had failed to give defendant notice of disability within 15 days from the beginning of the disability, or, in any event, before the policy had lapsed. Defendant at no time before suit was begun asserted as a defense that plaintiff's sickness did not require the regular attendance of a physician or that plaintiff did not give the defendant affirmative proof of the illness within three months after the termination of the period for which the company was liable. These are the only defenses now raised against plaintiff's right to recover.

It might well be said that the course of conduct of the defendant before suit was begun amounts to a waiver of these defenses.

"The law is well settled, we think, that the company may waive strict compliance with the policy in this respect, and that where the company does, either in express terms waive proofs of loss, or by a course of conduct calculated to throw the insured off her

guard, as by a distinct refusal to pay the loss, based upon some other defense, so that proofs are not furnished within the time fixed in the policy, the company cannot afterwards come in, and take advantage of the delay as a defense to the action." *Aurora Fire & Marine Ins. Co.* v. *Kranich,* 36 Mich. 289, 293.

During the course of the negotiations, defendant repeatedly relied upon the claim that the policy had lapsed and had been cancelled for nonpayment of renewal premium. Defendant now disclaims liability by claiming that plaintiff failed to furnish "affirmative proof" within three months after termination of the period for which the company is liable. This is analogous to the requirement to furnish affirmative proof of loss under a fire insurance policy. In *Improved-Match Co.* v. *Michigan Mutual Fire Ins. Co.,* 122 Mich. 256, 264, this court held:

"Counsel for defendant contend that the court should have directed the verdict in favor of the defendant because of the failure of the plaintiff to make and serve proofs of loss. It appears that, after the fire, the plaintiff wrote the defendant about it, and that it was a total loss. The defendant company immediately answered that it had canceled the policy. * * * This was virtually a denial of liability, and no proofs of loss were necessary to be made."

An insurance company, by placing its refusal to pay a loss solely upon the ground that the policy has been cancelled, waives its right to assert as a defense to an action thereon that the insured was not the owner of the property or had failed to disclose encumbrances. *Douville* v. *Farmers' Mutual Fire Ins. Co.,* 113 Mich. 158.

See, also, *Castner* v. *Farmers' Mutual Fire Ins. Co.,* 50 Mich. 273.

There is no merit in fact in defendant's claim that plaintiff failed to furnish defendant with affirmative proof within three months after the termination of the period for which the company is liable. The company has variously claimed that this period began on the date when the plaintiff first claimed disability, and on the date when the renewal premium was due. If "affirmative proof" means notice of disability, defendant company now has abandoned this defense; if "affirmative proof" is analogous to proof of loss, defendant has waived this defense by its course of inconsistent and misleading conduct in disclaiming liability on other grounds. *Aurora Fire & Marine Ins. Co.* v. *Kranich, supra.*

Did plaintiff's sickness "require the regular attendance of a legally qualified physician or surgeon?" In August, 1936, plaintiff consulted a physician who had X-rays taken; in September and October he was under a physician's care and attendance on six or eight occasions; later, in October, he was confined to a hotel room by his illness; he was in Ford hospital the first three or four days of November; he was advised by the attending physician that a minimum of six months away from work, in new environment, was necessary; returning to work, he spent only a portion of each day at his duties doing part-time work; on November 27th he notified defendant that he found it necessary to leave his work; on December 19th he was compelled to stop work; and on December 29th he went to Ford hospital again to consult his physician there and was advised there was little change in his condition. During his trip South he experienced abdominal pain which he had for a long time, resulting in extreme exhaustion. He consulted a physician, on May 11th, who examined him and diagnosed his illness as chronic recurrent appendicitis. He promptly re-

turned to Michigan, had an appendectomy performed about June 15th, and made a satisfactory recovery. The record fairly indicates that during all this period plaintiff's disability was due to chronic recurrent appendicitis. The record fairly establishes that plaintiff was wholly and continuously disabled and prevented from performing the duties pertaining to his occupation and that his illness was such as to require the regular attendance of a legally qualified physician or surgeon. See *Hohn* v. *Inter-State Casualty Co.*, 115 Mich. 79; *Hallock* v. *Income Guaranty Co.*, 270 Mich. 448. The record discloses that plaintiff's disability began December 19, 1936, during the time the policy was in force. Plaintiff is entitled to benefits during disability notwithstanding the failure to pay renewal premium (*Hallock* v. *Income Guaranty Co., supra*). The record does not disclose when disability ended.

Judgment for defendant is set aside and the case remanded for entry of judgment for plaintiff, upon further proofs to compute damages, in accordance with this opinion, with costs to appellant.

SHARPE, C. J., and BUSHNELL, CHANDLER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.