ELLIS, Judge.
This suit was originally filed by Olinde Hardware and Supply Company, Inc., hereinafter referred to as Olinde for the sake of brevity, against Mr. and Mrs. Aubrey C. Rogers, and is based upon certain notes respectively identified with several chattel mortgages executed by them in consideration for the purchase of merchandise from Olinde. The Rogers’ several accounts with Olinde had been consolidated on July 10, 1962 and in connection therewith the third party defendant, Prudential, issued to third party plaintiffs and to the General Electric Credit Corporation, who had purchased the notes from Olinde, with recourse, a group creditor’s life insurance certificate. The defendants answered plaintiff Olinde’s demand and coupled it with a third party demand against The Prudential Insurance Company of America, hereinafter referred to as Prudential, in which the third party plaintiffs sought judgment in the full amount of any judgment which might be rendered against them on the main demand as a result of the permanent disability of Aubrey C. Rogers. The group creditor’s life insurance certificate issued by Prudential contained a provision for “Total and Permanent Disability Benefit” and this provision is the basis of the Rogers’ third party demand. The material portion of the certificate reads as follows:
“GROUP CREDITORS LIFE INSURANCE CERTIFICATE
“This Certifies that the person (the debtor) named above being indebted to
GENERAL ELECTRIC CREDIT CORPORATION
(herein referred to as the Creditor) as evidenced by the obligation referred to above
HAS BECOME INSURED under the provisions of Group Creditors Insurance Policy No. GL-1S000 issued by The Prudential Insurance Company of America, Home Office, Newark, New Jersey, (herein referred to as the Prudential) *628 and will remain insured thereunder until such debtor’s insurance is terminated as described below.
* * * * * *
“TOTAL AND PERMANENT DISABILITY BENEFIT
“If the debtor, while insured under the Group Policy with respect to the indebtedness, becomes totally and permanently disabled as a result of bodily injury or disease so as to be wholly and continuously prevented from engaging in any business or occupation for remuneration or profit, and if the debtor survives until the end of the waiting period applicable to such indebtedness, as defined below, and remained continuously so disabled and insured under the Group Policy with respect to such indebtedness during said waiting period, then upon receipt of due proof thereof in writing, the Prudential will, subject to the conditions, limitations, exclusions and maximum payment hereinafter stated, pay to the Creditor the “Total and Permanent Disability Benefit” set forth herein. For the purpose of the foregoing, the term ‘total and permanent disability’ shall mean, with respect to an indebtedness, total disability which has existed continuously during the waiting period applicable to such indebtedness.
“The waiting period applicable to an indebtedness shall be the period beginning on the date total and permanent disability commenced and extending for a period equal to * * * (b) six months.
* * $ * * *
“The amount of the Total and Permanent Disability Benefit with respect to the indebtedness is the amount necessary to discharge such indebtedness at the end of the waiting period applicable to such indebtedness, reduced by the amount of all unpaid instalments which became due prior to the end of such period.
******
“TERMINATION OF INSURANCE
“The insurance under the Group Policy on the debtor with respect to the indebtedness shall automatically terminate if the indebtedness is discharged, or if the indebtedness becomes in default and the Creditor does not continue premium payments, or if the indebtedness is transferred to another creditor, or if a person succeeds the debtor under and by a Transfer of Equity accepted and approved by the Creditor, or if the Group Policy terminates * *
Prudential, the third party defendant, denied liability on the grounds that Rogers defaulted in the payment of his indebtedness and failed to make any payments thereon and that premium payments were only made through November 20, 1962 by General Electric Credit Corporation. Liability is also denied on the grounds that the indebtedness was transferred by General Electric Credit Corporation back to Olinde within the period of six months from the commencement of Rogers’ disability. It is contended that under the express provisions of the certificate and group policy the disability insurance thereunder on Aubrey C. Rogers, with respect to his indebtedness, automatically terminated prior to the expiration of the six month waiting period.
The case was submitted to the lower court on the pleadings, the mortgages and notes, the consolidation agreement, insurance certificate and the group policy issued by The Prudential Insurance Company of America to General Electric Credit Corporation as well as related documents, and the facts at issue were settled by stipulations. Briefs were presented to the trial court. Judgment was rendered for the plaintiff against the defendant as prayed for by stipulation. The third party demand was taken under advisement and judgment was thereafter rendered against the third party defendant for the full amount of the judgment previously rendered on stipulation against defendants, but subject to a credit of $192.42, representing six monthly installments on *629 the consolidated indebtedness. Third party defendant has appealed from that judgment.
The facts necessary to a decision in this case have either been stipulated or are undisputed. It was stipulated that the policy of insurance remained in force and effect from July 10, 1962 until on or about November 30, 1962, at which time Olinde repurchased the note in question from the General Electric Credit Corporation and the contract of insurance was canceled as to this particular purchaser and also this indebtedness at this time. It is also not in dispute that the purchaser, Aubrey C. Rogers, was hospitalized for surgery on or about September 21, 1962 and that he was and has been since that date totally disabled which is shown by the medical report of Dr. Edwin Walker which is filed in evidence in this proceeding with the stipulation that should he have testified it would be the same as the statements made in the report and the record contains no testimony to the contrary.
It is therefore clear from the facts that on the date Aubrey C. Rogers became permanently and totally disabled the policy of insurance was in full force and effect. However, subsequent thereto, on November 20, 1962, no further premiums were paid and it was stipulated that the General Electric Credit Corporation transferred the indebtedness back to Olinde within a period of six months from the commencement of Rogers’ permanent and total disability.
Appellant’s position on appeal is concisely set forth in its brief as follows:
“By virtue of the stipulations and premium paying provisions of the coverage, it was necessary, in order to establish liability on the part of Prudential, that it receive written proof that Rogers’ total and permanent disability had existed for a period of six months and during such period the insurance must have been kept in effect by keeping the paymentS'bn the indebtedness current or continuing premium payments, and the retaining of ownership of the indebtedness by General Electric Credit Corporation.
“Before there could be anything due under the disability provisions of the policy, such disability must have existed for six months. It is only after the expiration of such six-month period that the liability of the company to pay the disability benefits accrues. The language is clear and unambiguous.
“In General American Life Insurance Company v. Rios (Texas) [139 Tex. 554] 164 S.W.2d 521, the court considered a similar disability provision in a group employee policy and reached the result spelled out in the policy, that the policy terminated when the insured ceased paying premiums during the six months’ waiting period.
Sfí íjt
“It was stipulated that Rogers failed to make any payments to General Electric Credit Corporation and that General Electric Credit Corporation failed to continue paying premiums to Prudential after November 20, 1962. Thus the debt was in default when the creditor discontinued paying the premiums required by the policy to keep Rogers insured for six months.
“It was further stipulated that General Electric Credit Corporation transferred the indebtedness to Olinde within a period of six months from the commencement of Rogers’ disability and thus the insurance on Rogers with respect to the debt terminated prior to the expiration of the six months’ waiting period.
“It is therefore obvious that the insurance on Rogers, had already terminated by the time he had been disabled for a period of six months.”
Counsel for Mr. and Mrs. Aubrey Rogers, third party plaintiffs, has made an accurate and’ brief resume of the contentions of third- party, plaintiffs and third party defendants relative to the questions which *630 must, of necessity, be decided in arriving at a decision in this case. We quote this ré-sumé from his brief as follows:
“ * * * Prudential’s position basically is that parties to an insurance policy are free to contract in any way they see fit, and the contract in question does not afford protection in this case, due to three (sic) clauses.
“The first clause relied on is the ‘six months waiting period’ clause which will be discussed in more detail hereinafter. The policy provides that ‘if buyer becomes totally and permanently disabled and insured thereunder for a ‘waiting period’ of six months, the company will be liable on the policy. Prudential contends that this language means that no claim develops under the policy until after the insured has remained disabled for the entire six months period. Plaintiff and third-party plaintiff contend that the policy is designed to protect against disability and that the claim arises as soon as the disability begins. The six months waiting period is a procedural or evidential device to establish when and how and how much the company is obligated to pay.
******
“The next clause relates to payments on the indebtedness (which would include payment of the insurance premium) after the disability begins and during the six months waiting period. It is contended that in order for the insured to recover under the policy in question that payments must be continued after the disability commences, and failure to make such payments will result in cancellation of the policy. Plaintiff and third-party plaintiff admit that failure by the debtor to make payments on the indebtedness after disability begins may result in cancellation of the policy insofar as future claims are concerned, but contend that the cancellation of the policy after disability commences cannot affect any claim which has accrued before the effective date of such cancellation.
“The next clause relied upon by Prudential relates to the transfer of the indebtedness by General Electric Credit Corporation to Olinde Hardware. Prudential contends that the policy remains in force and effect only while General Electric Credit Corporation holds the notes in question. Plaintiff and third-party plaintiff contend that this clause operates in a similar manner to the clause relating to payments of the indebtedness, after the disability begins, namely that transfer of the note might cancel the coverage insofar as future claims are concerned, but cannot affect the insurer’s, liability on a matured claim or a disability which commenced before the debt was-transferred or assigned.”
It is clear from the foregoing statements, that the main contentions of Prudential in-this particular case depend upon an interpretation of the policy in question which would allow maturation of the disability provisions only if the debtor remains constantly insured for the six month waiting-period by payment of all premiums falling due. It might be noted that the obligation-of paying the insurance premiums if debtor is in default on the contract during the six month waiting period is placed upon the-creditor, General Electric, under the terms. of the policy in question. Prudential also, urges that a proper interpretation of the policy would mean that transfer of the indebtedness in question to a new creditor during the six month waiting period would', defeat debtor’s claim to disability benefits. All other requirements for obtaining disability benefits have been fulfilled by the-debtor in this case.
It is apparent from the certificate provisions under consideration that the risk insured was the possibility or probability of the total and permanent disability of the debtor. There is the recognition of the fact that if such condition or malady did occur, the debtor would be unable to pay the- *631 indebtedness, the monthly installments, or the premiums. A downward adjustment of Prudential’s ultimate liability is actually made in the policy, in that it is not required to pay General Electric any installments which might be delinquent at the end of the six month waiting period.
At this point it should be noted that there have been no Louisiana cases cited which are directly in point on the critical issues in this case. However, there are two distinct lines of cases found in the jurisprudence of our sister states. As mentioned supra, counsel for appellant cited, among other authorities, the case of General American Life Insurance Company v. Rios, 139 Tex. 554, 164 S.W.2d 521, and quoted at length from it:
“The provision obligating the company to pay the compensation provided for total and permanent disability may be more tersely stated, for present purposes and without variance of language, as follows: ‘If the employee shall furnish the company with due proof that * * * he has become totally and permanently disabled * * *, and that he * * * has been so * * * disabled for a period of six months, the company will immediately pay to the employee * * *, the amount of insurance in force * * * at the time of the approval by the company of the proofs as aforesaid.’
“The provision governing the payment of premiums reads: ‘All premiums are payable in advance at the home office of the company, but may be paid to an authorized agent of the company upon delivery of a receipt signed by the president or vice president, and countersigned by said agent. If any premium shall not be paid when due, this policy shall terminate except as hereinafter provided.’
* * * * * *
“The coverage clause of the contract quoted above clearly obligated the company to pay the sum stipulated ‘immediately’ upon being furnished proof that the insured was totally and permanently disabled, and that such a state of disability has existed ‘for a period of six months.’ As stated in Missouri State Life Insurance Company v. Nidiffer, 168 Tenn. 584, 79 S.W.2d 1024, 1025, ‘Before there can be anything due under the policy for total and permanent disability, such disability must have existed for six months.’ The period of permanent disability covered has a definite time of beginning. It is not from the time disability in fact begins, but from the time the insured furnishes the company due proof that total and permanent disability has been existent for a period of six months. It is only after expiration of that period and the furnishing of proof thereof that the liability of the company to pay the disability compensation accrues. There is no room for indulging in possible constructions of the language of the coverage contracted for. It is clear and unambiguous, and no other language of the policy has the effect of rendering it ambiguous. The following statement in Bergholm v. Peoria Life Insurance Company, 284 U.S. 489, 52 S.Ct. 230, 231, 76 L.Ed. 416 (a case in which the disability provisions were sufficiently similar to those of the present case to invoke the same principal with respect to liability), is in point:
“ ‘Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums becoming due after the receipt of such proof. The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy.’
“(1) The language of the provisions of the policy with respect to the company’s obligation to pay total and permanent benefits has no doubtful meaning and therefore affords no basis for invoking the just and well established rule that it is *632 to be construed either most favorably for the insured or most strongly against the company. The rule furnishes no warrant for importing unusual and unnatural meanings into the plain words of the contract provision stipulating the condition upon which the company will pay for total and permanent disability.
“(2,3) The condition of the policy that it shall cease if the stipulated premiums are not paid as provided for is of the very essence and substance of the contract. Bergholm v. Peoria Life Ins. Co., supra. It is undisputed that for a period of four months of the seven months’ period elapsing between the inception of disability and the making of ‘due proof, no premiums were paid. It is therefore obvious that the policy had already terminated at the time Rios’ attorney furnished proof of six months’ total and permanent disability to the company.
“It appears from what has been stated that we are in accord with the holding of the Beaumont Court [General American Life Insurance Co. v. Johnson, Tex.Civ. App., 88 S.W.2d (535) 537] and the following quoted reasoning upon which it is predicated: ‘Here, under the terms of the policy, the insurance ceased to exist at the end of the period for which the last premium was paid. That was on November 30, 1931. No premiums were paid after that date. So the certificate ceased to be effective after that date. If so, then no cause of action existed. * * * As the disability benefits were to be had only by virtue of the certificate, and as the life of the certificate depended upon the payment of monthly premiums, and these premiums were not paid, it is clear, we think, that, in order to have a right to the disability benefits, the premiums on the policy must have been paid during the six months of disability required before proof of such disability and demand for payment of the benefits could be made.’ ”
In the Rios case the court cited, in support of the conclusions reached: General American Life Insurance Company v. Johnson, Tex.Civ.App., 88 S.W.2d 535; Bergholm v. Peoria Life Insurance Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416; Missouri State Life Ins. Co. v. Nidiffer, 168 Tenn. 584, 79 S.W.2d 1024; Johnson v. Missouri State Life Ins. Co., 207 N.C. 512, 177 S.E. 646; Missouri State Life Ins. Co. v. Hardin, 168 Tenn. 340, 78 S.W.2d 832; and McCutchen v. All States Life Ins. Co., 229 Ala. 616, 158 So. 729.
It is pointed out in appellee’s brief that in the case of Kingsland v. Missouri State Life Insurance Co., 228 Mo.App. 198, 66 S.W.2d 959, the appellate courts of the State of Missouri first subscribed to the results reached in the above cases cited in support of his contentions by counsel for Prudential. However, the decision in the Kingsland case was overruled by a later Missouri decision in the case of Schuerman v. General American Life Insurance Company, 232 Mo.App. 352, 106 S.W.2d 920, in which the court awarded disability benefits under facts quite similar to those presented in the case at bar. .In support of Rogers’ and Olinde’s position, on appeal, the Schuerman case is relied upon as is the case of Shea v. Aetna Life Ins. Co., 292 Mass. 575, 198 N.E. 909.
Prudential’s attorney argues that the Shea case is not in point since the premiums were paid during the six month waiting period in that case. It appears that the main issue in the Shea case was cessation of employment during this crucial period. However, the principle at issue is the same as in the case at bar. The following quotation from the Shea case shows its similarity to the case at bar and the court’s interpretation of such disability provisions :
“There was evidence that the premium payable by the employer covering insurance on the plaintiff under the policy was paid in full by the employer in advance, and that the required contributions of *633 the plaintiff toward the cost of such insurance to the end of July, 1932, either were withheld by the employer from the plaintiff’s wages or paid to the employer by the plaintiff. Furthermore, it could have been found on the basis of the specific findings and the evidence of the plaintiff’s inability to work that he became totally disabled not earlier than April 26, 1932, and not later than July 23, 1932, while he was employed by the employer, and that this total disability was permanent.
“(6) The liability of the company to pay disability benefits to the plaintiff attached when he became totally and permanently disabled between April 26, 1932, and July 23, 1932, though the payment of such benefits was subject to the condition precedent that the permanent nature of the disability be proved in the manner prescribed by the insurance contract. The existence of his total disability ‘for a period of six months’ was an essential element of proof of permanent disability and, consequently, fixed the time of payment of the disability benefits since such proof could not be made until ‘after such disability has existed’ for that period. See Kimel v. Missouri State Life Ins. Co. [10 Cir.] 71 F.(2d) 921, 924. The language of the contract, read in the light of the statute authorizing it (G.L. [Ter.Ed.] c. 175, § 24), implies that the existence of total disability for this period is not a condition precedent to liability but, rather, is evidential of the permanent nature of the disability as of the time it came into existence.
* * * * * *
“These provisions must be construed reasonably. And it would be unreasonable to construe them as meaning that the liability to pay disability benefits under the contract does not attach until after total disability has existed for a period of six months since, on that construction, the employee would not be insured against a total disability beginning at any time during the last six months of the term of the insurance contract, and it would be possible for the employer in every case, by terminating the employment because of the total disability of the employee and cancelling the insurance because of such termination of employment, to deprive the employee of benefits under the insurance contract on account of such total disability. See Murray v. Metropolitan Life Ins. Co., 145 Miss. 266, 285, 286, 110 So. 660; Smithart v. John Hancock Mutual Life Ins. Co., 167 Tenn. 513, 521, 522, 71 S.W.(2d) 1059.

“The evidence tended to show that the employer attempted to cancel the insurance because of the previous termination of the plaintiff’s employment. If, however, as could have been found, the plaintiff became totally and permanently disabled while employed by the employer and while the insurance contract was in force, the liability for disability benefits then attached and the employer could not thereafter cancel such insurance because of the termination of the plaintiff’s employment, at least where, as could have been found, such employment was terminated by reason of the plaintiff’s total disability.”
Also directly in point and in support of the position taken by Olinde and Rogers, on appeal, are the cases of Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn. 513, 71 S.W.2d 1059; Horn’s Administrator v. Prudential Ins. Co. of America, 252 Ky. 137, 65 S.W.2d 1017. Appellees also cite Rood v. National Casualty Company, 296 Mich. 530, 296 N.W. 672, Appelman Insurance Law & Practice, Vol. 1, Sec. 126, page 119, and Prudential Insurance Company v. Cox, 254 Ky. 98, 71 S.W.2d 31.
In 29 Yale Law Journal 163, is an article by Corbin dealing with elementary legal relations. Apropos to this case is the discussion of operative facts and evidential facts.
An “Operative Fact” is defined as “Any fact, the existence or occurrence of which *634 will cause new legal relations between persons.” Applying this definition to the facts presented herein, it appears that the insured’s becoming disabled, while covered with disability insurance policy, is an operative fact.
Corbin defines an “Evidential Fact” as “Any fact, the existence or occurrence of which tends to prove the existence of some other fact.” In this case the requirement that six months elapse from the inception of insured’s disability before proof of loss may be presented is in the nature of an evidential fact.
After a review of the cases and authorities cited by opposing counsel herein in light of the Insurance Certificate in question and all other facts and documents presented, this court is of the opinion that Rogers is entitled to recover under the permanent and total disability provisions of his policy with Prudential. It is a coincidence that this case came before this court at the same time that the similar case of Wharton v. Louisiana Hospital Service, Inc., La.App., 183 So.2d 133, was presented. In that case the insurance company sought to avoid payment of certain benefits under the dreaded disease provisions of a health and accident policy on the grounds that the policy lapsed, after the insured’s cancer was diagnosed, for non-payment of the premiums. In denying avoidance of the policy, this court held that “Once the liability of the insurer attaches, or stated otherwise, upon maturity of the insured’s claim while the contract is in force, public policy demands that the vested right of the insured to uninterrupted receipt of benefits be unaffected by subsequent termination * * ” of the policy. Similarly, in this case, the insurer cannot be allowed to require premium payments, or any other action or non-action on the part of either the debt- or, Rogers, or the creditor, General Electric Credit Corporation, in order to keep the policy in force in respect to the debt- or’s claim for disability, subsequent to the occurrence of the eventuality insured against, which, in this case, is the total and permanent disability of the debtor. The insurance certificate provisions themselves recognize the fact that the debtor, himself, probably cannot pay the premiums after disability and is not expected to do so. The lapse of the policy during the six month waiting period for non-payment of premiums or transfer of the debt to a new creditor is of no consequence as regards the insured’s right to collect under the disability provisions of his certificate of insurance.
One event insured against, the total and permanent disability of the debtor, occurred in this case while the contract was in full force and effect. Prudential is attempting to rely upon General Electric’s failure to continue premium payments during the six month waiting period and after the onset of the disability to defeat its insured’s claims. It is also relying upon the fact that the insurance certificate provides that transfer of the indebtedness to another creditor terminates the insurance. Such a transfer did occur in this case over two months after Rogers’ disability commenced.
The construction sought by Prudential of the insurance certificate at issue would be contra bonos mores. It could form a basis for collusion between any insurer and any creditor, whereby in every instance, any debtor’s claims to disability benefits could be defeated by unilateral action of the creditor.
It might be noted that in this case there was no reason for General Electric to have stopped making premium payments on Rogers’ policy, or to have transferred the indebtedness back to Olinde before the six month waiting period had elapsed. General Electric could not lose in any event so long as Olinde and Prudential remained solvent. (There is no showing in this record that either Olinde or Prudential was in financial difficulties during the period in question.) The notes were endorsed with recourse. And in fact Olinde did pay the notes off when the debtor became delinquent. Assuming that the disability was certain, General Electric could have merely *635 waited for the six month period to elapse, kept the premiums up, and presented proper proof of disability. It could then have collected from Prudential under the disability provisions of the policy and obtained any deficit from Olinde, since the notes were negotiated with recourse. Even if the disability was not sufficiently proven, Olinde could be called upon, by General Electric, to pay off the entire indebtedness. There is no explanation in the record of General Electric’s position in prematurely lapsing the policy by nonpayment of premiums and by transfer of the indebtedness.
For emphasis, let us cite an extreme result which might occur if Prudential’s interpretation of the policy were to be employed. The group policy could be terminated, under its provisions, while several large disability claims were pending, i. e., the six month period had not elapsed on these claims. The debtors would then no longer be insured for the entire six month period and would, under Prudential’s theory of the case, have no right to collect benefits under the disability provisions of their insurance policies. The untenable nature of this result is immediately apparent.
The better view of disability provisions such as we have in this case is that the claim to disability benefits arises and the rights and duties between the parties, insurer and insured, are contingently fixed as of the date that the disability commences, and mature for payment when the waiting period (six months) expires and due proof is furnished. In this case, after the insured became totally and permanently disabled while the certificate was in force {an operative fact), there were only two further requisites in order for him to enforce the disability provisions of his policy. First, the insured must survive for the waiting period. Second, the insured must furnish insurer satisfactory proof of total and permanent disability at least six months after his disability has commenced and within one year after the waiting period has run. (Both of these are evidential facts.) In this case the insured did so survive and presented proper proof of disability to Prudential at the proper time.
For the reasons assigned, the decision of the trial court is affirmed in its entirety at the cost of third party defendant.
Affirmed.