183 So.2d 133 (1966)
Edward B. WHARTON
v.
LOUISIANA HOSPITAL SERVICE, INC.
No. 6550.
Court of Appeal of Louisiana, First Circuit.
January 24, 1966.
Rehearing Denied February 28, 1966.
Writ Refused April 15, 1966.
Tom H. Matheny, of Pittman & Matheny, Hammond, for appellant.
Allen B. Pierson, of Pierson & Pierson, Ponchatoula, for appellee.
Before R. S. ELLIS, LANDRY, REID, BAILES and F. S. ELLIS, JJ.
LANDRY, Judge.
This appeal presents for determination the following question of law: Does the attached liability of a group insurer for medical expense pursuant to a "dread disease endorsement" of a health and accident policy, cease upon failure of the insured to make premium payments allegedly due subsequent to the onset of the disease by the terms of the policy? The learned trial court resolved the issue adversely to defendant-insurer, Louisiana Hospital Service, Inc., and from said unfavorable decision said defendant has appealed.
Plaintiff, Edward B. Wharton, initiated this action to recover certain hospital and drug bills allegedly due under a group health and accident policy issued by appellant to appellee's hereinafter named employer. After trial below, the lower court rendered judgment in favor of plaintiff in the sum of $133.04, but rejected plaintiff's claim for penalties and attorney's fees as provided for by LSA-R.S. 22:658. Plaintiff has neither appealed nor answered defendant's appeal, consequently the only issue before us is the correctness of the decree awarding plaintiff judgment *134 for medical and hospital expense in the amount noted.
The facts of the instant matter are not in dispute and are before the court on a stipulation which relates the circumstances attending the present case as hereinafter narrated.
Plaintiff, a schoolteacher in the employ of the Tangipahoa Parish School Board, was found in October, 1959, to be suffering from cancer of the right larynx or vocal cord necessitating a laryngectomy which was performed October 15, 1959. Although the removal of his vocal cords deprived plaintiff of the power of ordinary speech, through therapy he has since acquired the ability to speak by substituting the diaphragm in place of the larynx, thus making himself capable of being understood. In November, 1959, plaintiff was granted sick leave which, upon expiration, was supplanted by sabbatical leave. During the entire leave period plaintiff's employer continued to deduct premiums due from the salary owed plaintiff and remitted same to defendant. Upon expiration of the sabbatical leave plaintiff was carried on "straight leave" without pay, during which time no further premiums were paid, until appellee's resignation within a month thereafter on February 1, 1961. It is conceded appellant has paid all medical bills incurred by plaintiff prior to February 1, 1961.
Appellant's position, tersely stated, is the policy provisions require continued payment of premiums to keep the insurance in force notwithstanding the maturing of a claim under the dread disease endorsement.
Defendant readily concedes plaintiff's aforesaid illness falls within the terms of the dread disease endorsement and that it was liable for expense incident thereto (not to exceed the period of limitation hereinafter shown), but only for such portion thereof incurred during the period in which premiums continued to be paid. Appellant's aforesaid argument is predicated upon Paragraph II of the endorsement and Paragraphs I and II, respectively, of the Group Contract, which state:
"II. MAXIMUM PERIOD
For each person included hereunder, the benefits shall be available for expenses incurred during the three-year period immediately following diagnosis of any of the named diseases, and not thereafter."
"I.
FEES AND PAYMENTS: a. All fees are due and payable on the monthly date of the Contract. Payments shall be made at the office of LOUISIANA HOSPITAL SERVICE, INC. Failure to make payment within ten (10) days after it is due will automatically, without any notice, terminate all rights under this Contract.
b. An enrollment fee of $1.00 shall be paid by the subscriber only, at the time of payment of the first monthly premium.
c. Indulgences granted at any time or times shall not be construed as a waiver of these conditions.
II.
TERMINATION OF COVERAGE AND CONVERSION PRIVILEGES:
a. If the employer, or the subscriber who converts to a direct payment basis, fails to pay the regular charges to Louisiana Hospital Service, Inc., within ten (10) days after they become due and payable, the Contract is automatically terminated, without any notice, and no subscriber and no contract dependent shall thereafter be entitled to any further benefits hereunder.
b. In the event the employer notifies Louisiana Hospital Service, Inc., that the coverage of any employee under *135 the Group Contract is to be canceled, then coverage respecting such employee and his contract dependents shall terminate automatically without any further notice at the end of the period for which payment has been made.
c. If coverage of an employee is terminated solely because he leaves the employ of the employer while the Group Contract is in effect, then the employee may apply within ten (10) days thereafter to Louisiana Hospital Service, Inc., for conversion at its established charges and without interruption of coverage.
d. Indulgences granted at any time or times shall not be construed as a waiver of these conditions."
It will be observed the hereinabove cited Paragraph Two of the endorsement limits the period of defendant's liability for medical expense due to cancer, to a period of three years from date of such diagnosis whereupon payments of benefits cease. Appellant maintains, in substance, that the term "person included" as appears in Paragraph II of the endorsement, contemplates a person whose premiums are paid as provided in Paragraph I of the policy. On this premise defendant argues appellee was not a "person included" after February 1, 1961, because no payments were made on the policy subsequent to that date consequently Subparagraph (a) of paragraph I terminated appellee's rights under the policy ten days thereafter. In this regard, defendant contends that if plaintiff desired to remain protected following his resignation February 1, 1961, plaintiff could have availed himself of the conversion privilege contained in Paragraph II of the policy, supra, by continuing payment of premiums. Appellee concedes no conversion was requested and no premiums were paid subsequent to February 1, 1961.
The term "person included" appears twice in the endorsement hereinabove mentioned. In Paragraph I thereof entitled "Diseases Included" we find it used as follows: "When, on, or after, the effective date of this Endorsement, any person included hereunder shall contract one of the following diseases * * *." This reference to "any person included" apparently refers to "the subscriber * * * and eligible dependents listed on the application * * *." Our conclusion in this respect is supported by the language of the group contract which provides that "SUBSCRIBERS AND FAMILY DEPENDENTS, includes spouse residing with subscriber and unmarried dependent children over 90 days and under 19 years of age. * * *"; also by the additional provisions which state "A child shall be automatically and immediately excluded as a dependent upon reaching 19 years * * *", and "A spouse may be added * * * subject to acceptance * * * after which such spouse will be included * * *."
We conclude the phrase "person included" as used in the endorsement does not refer to premium payments but is merely part of a paragraph limiting the payment of benefits due under the policy. The language of Paragraph II of the endorsement is clear and unambiguous. It unequivocally limits the insurer to the obligation of paying benefits to the three year period immediately following diagnosis of an included disease. Simultaneously the right of the insured to receive such benefits is restricted to the same three year interval.
In addition, if the contract is "automatically terminated" for either non-payment of "regular charges" (See Group Contract Paragraph II a, supra), or pursuant to the provisions of Group Contract Paragraph II b, supra, upon the employer giving notice that coverage of an employee is to be cancelled, or if "coverage of an employee is terminated solely because he leaves the employ of the employer" as recited in Group Contract Paragraph II c, the question of what person or persons were included in the subscriber's contract with defendant insurer appears to be immaterial. The paramount issue in such *136 instances is not what person or persons were covered but rather what were the rights of the insured at termination.
It is the position of plaintiff that the policy entitled him to benefits consisting of expenses incurred during the three-year period immediately following diagnosis of any disease enumerated in the endorsement if such diagnosis occurred while the policy was in full force and effect. Stated otherwise, plaintiff argues once his right to benefits matures, defendant is obligated to continue payment thereof for the three year period stated and continued payment of premiums is not a condition precedent to his right to uninterrupted receipt thereof.
It is to be noted we are not herein concerned with an alleged termination under Paragraph II a of the Group Policy inasmuch as plaintiff, upon severance from his employment, did not elect to convert to a standard policy as authorized in Paragraph II c of the master policy. We are in the instant matter dealing with the effect of an alleged termination pursuant to Paragraph I a which states that "failure to make payment within ten (10) days after it is due will automatically, * * * terminate all rights under this Contract."
In substance appellant contends its obligation to pay benefits due under the policy persists and endures only so long as the policy remains in full force and effect. The enormity of this position is readily apparent and appears a matter of first impression quoad the appellate tribunals of our own state. No citation of authority has been advanced by learned counsel for appellant in support of his said contention and our own independent research has failed to disclose applicable precedent. Olezene v. Eagle Life Ins. Co., 11 La.App. 153, 121 So. 881 and Carter v. Washington Fidelity National Ins. Co., 10 La.App. 14, 120 So. 424, are clearly distinguishable from the case at bar. In the Olezene case, supra, the court pretermitted consideration of the question of the insurer's right to require premium payments while paying benefits to an assured. While there does appear some obiter dicta in the Olezene case, supra, indicating the court's doubt as to the right of the insurer to demand premium payments subsequent to commencement of benefit payments, the case does not expressly so hold. In the Carter case, supra, the decision of the court was expressly limited to the question whether the record established the mailing of two claims for sick benefits as required by policy provisions.
Appellant's contention obviously confuses and fails to distinguish between the insurer's obligation of coverage and liability for benefits due once an assumed risk occurs. Coverage under a policy of insurance has been defined as the aggregate of risks assumed by the insurer, the sum of the eventualities against which the policy affords protection. Vol. 44 C.J.S. Verbo Insurance § 49, page 497. On the other hand, the insurer's liability for benefits refers to the obligation of the insurer to pay benefits in such amounts and for such periods as the policy specifies in the event of a covered loss.
Unquestionably upon termination of the contract, pursuant to Paragraph II a or b, supra, or in the event the insurer exercised the unilateral right of cancellation, no liability would attach to defendant herein with respect to any enumerated disease subsequently diagnosed or any of the various other risks covered by the policy which might subsequently occur. This is necessarily so because for the insurer to become liable, the covered risk or eventuality must occur and mature while the policy is in full force and effect.
However, once liability of the insurer for an assumed or covered risk is established, the obligation to continue payment of benefits in accordance with the policy provisions governing same, becomes fixed and constant. Once the liability of the insurer attaches, or, stated otherwise, upon maturity of the insured's claim while the contract is in force, public policy demands *137 that the vested right of the insured to uninterrupted receipt of benefits be unaffected by subsequent termination as will hereinafter appear. To hold otherwise would lead to manifestly absurd, ludicrous and inequitable results as we shall proceed to demonstrate. Suppose, for example, the case of an injured workman receiving compensation benefits from his employer's insurer. Could it in equity or good conscience be argued the insurer's continued liability is dependent upon the employer's renewal of the current contract at expiration? Could it reasonably be contended that failure of the insurer to renew the contract upon termination or the failure of the employer to pay subsequent premiums adversely affect the right of the employee to receive benefits due subsequent thereto. Again, assuming the instance of a claimant entitled to medical payments under an automobile liability policy, could it be logically argued such an insured must renew his policy following the accident in order to be entitled to medical expenses resulting from injuries received in an accident occurring during the initial policy period but incurred after policy expiration? More particularly, in the case at bar, according to defendant's interpretation of the agreement, plaintiff's right to recover could have been defeated in its entirety by the simple expedient of the employer discontinuing premium payments immediately upon the diagnosis of plaintiff's condition. Even more appalling, a literal application of appellant's contention would sanction the termination of plaintiff's rights by exercise of the policy provision according appellant the unilateral right of cancellation at any time subject only to the condition of giving prior notice of such cancellation.
We note cases wherein courts of other jurisdictions have had occasion to consider the effect of proof of loss and payment of premium clauses with respect to the maturity of claims.
In Prudential Insurance Company v. Gray, 230 Ala. 1, 159 So. 265, the Supreme Court of Alabama stated the following in considering the effect of timely furnishing proof of loss:
"But there is a difference between the existence of a right to disability and the accrual of the cause of action for the recovery. If the policy is so set up that the claim came into existence when the disability occurred, but that the cause of action did not accrue until proof of the disability was furnished, the delay of the proof not extending beyond a reasonable time (Provident Life & Accident Ins. Co. v. Heidelberg, [228 Ala. 682], 154 So. 809) did not cut off the claim, though the proof was not furnished until after there was default in paying the subsequent premium." (Emphasis added.)
The Alabama court recognized that whether a proof of loss and continued payment of premiums until such proof was furnished constituted conditions to the existence of the claim rather than to the right to sue on a claim which had otherwise accrued, would depend upon clear and express terms of the policy. It indicated it would apparently give effect to such a provision clearly expressed. Although we are not herein concerned with the related issue of proof of loss, we note that reasonable requirements regarding proof of loss may be imposed as a prerequisite to recovery. In 20 Am.Jur. 490, verbo Insurance § 1374, we find the following:
"The purpose of a provision for notice and proofs of loss is to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it."
It is evident that certain procedural and evidentiary proofs imposed by the insurer as conditions precedent to recovery may be necessary to protect the insurer against fraudulent or inflated claims. However, no such reason exists for the requirement urged by defendant in the case at bar.
*138 A case similar to the one presently under consideration is Horn's Administrator v. Prudential Ins. Co. of America, 252 Ky. 137, 65 S.W.2d 1017, which involved a claim under an employer's group policy. The employee, however, paid no premiums after his injury and his employment was terminated before the claim was filed. As in the instant case, the insurer contended its liability ended with the employee's termination and failure to continue premium payments. In holding the insurer liable, the court stated:
"The insurance company argues that its liability under the policy ended with Horn's release from the service of the railroad company and because of his failure to pay premiums thereafter. If Horn became totally and permanently disabled upon the day he received the injury to his foot, although his previous physical condition may have been the contributing cause, he at once became entitled to the indemnity promised him by his contract. The situation is just the same as though he had died that day and claim were being made for the indemnity provided for death through a natural cause. His right became fixed then. Equitable Life Assurance Society [of United States] v. McDaniel, 223 Ky. 505, 3 S.W.(2d) 1093. It would be as anomalous to require a continuance of premium payments thereafter as it would be to require them after death. The premiums already paid carried the policy 15 days beyond the date of his injury, when it is claimed he became totally and permanently disabled, and continued so until his death. Premiums were no longer due. This policy had matured so far as this subject of indemnity is concerned by reason of the happening insured against. McGovern v. United States (D.C.) 294 F. 108. A subsequent lapse of the policy in other respects could not operate as a release of the company for any liability on account of total disability which had arisen prior to that time. Illinois Bankers Association v. Byassee, 169 Ark. 230, 275 S.W. 519, 41 A.L.R. 379. Provisions in the policy which automatically canceled the insurance upon his termination of employment could not under these circumstances become applicable. Equitable Life Assurance Society v. Fannin, supra (245 Ky. 474, 53 S.W. 2d 703). Of course, it would be different if his total and permanent disability arose after the policy lapsed."
We also note two cases wherein the insured was covered by a life policy providing disability benefits to the effect that the entire amount of the insurance in force would be paid the insured in the event of total and permanent disability, thus ending the insurer's obligation under the contract. Schuerman v. General American Life Ins. Co., 232 Mo.App. 352, 106 S.W.2d 920; Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn. 513, 71 S.W.2d 1059.
Although the policy in the present case contains no such provisions, but provides coverage as to certain other risks and eventualities so long as it was kept in force by premium payment, we believe the following observations from the Smithart case, supra, applicable to the present litigation insofar as it concerns claims arising from risks occurring while the policy is in effect:
"The necessity that subsequent premiums be paid to preserve the insured employee's accrued rights is therefore nothing more or less than a condition to the right of recovery, and as such is, in our opinion, an altogether groundless and unreasonable condition. The entire contract having matured, and the substantive right of the employee having become fixed, by the happening of the contingency insured against, the disability of the insured, there is no further or continuing risk to be carried by the insurer in consideration of further premiums, in so far as the disabled employee is concerned. Payment of additional premiums would not continue *139 in force insurance on his life, since the entire value of the contract is already payable as indemnity for his disability. The condition is therefore impossible of performance, and to enforce it would be to nullify the contract and render it altogether unenforceable whenever the disability insured against occurs near the end of the term for which premiums have been paid, as in the case before us."
The views which we have herein expressed find further support in the following which appears in Appelman Insurance Law & Practice, Volume 14, Page 189, Sec. 7958:
"If there was no default before the accidental death of the insured when the policy matured, there could be none afterwards. The insured cannot be denied sick benefits, where the right thereto matured before nonpayment of premiums, but can be denied only when sickness begins or occurs within the period of nonpayment. Where the insured is given until a given day in the month to pay an assessment levied, there can be no forfeiture for nonpayment where the insured dies on such given day. Nor can the insurer avoid liability for an already accrued liability by a subsequent nonpayment."
We note also the appellate courts of Michigan share the views herein expressed. In Rood v. National Casualty Co., 296 Mich. 530, 296 N.W. 672, it was held that the right of an insured to seek benefits accruing while a group insurance policy was in force was not defeated by failure to pay renewal premiums subsequently falling due.
Appellant also maintains appellee was fully aware of the policy provisions and acceded thereto as evidenced by the continued payment of premiums from October, 1959, to February 1, 1961, and plaintiff's failure to demand the return thereof in this proceeding. In this regard it is significant that plaintiff does not plead unawareness of the policy provisions or that he was misled or defrauded in any way. Plaintiff's position is predicated upon an interpretation of the contract provisions different from that of defendant. As regards the continuation of premium payments for the fifteen month period following diagnosis of plaintiff's disease, it appears payment of premiums was effected by plaintiff's employer deducting the amount thereof from sums due plaintiff and remitting same to defendant. It further appears no payment was made directly by plaintiff and none whatsoever was made following plaintiff's placement on straight leave. Be that as it may, the method of payment is immaterial considering the policy clearly remained in effect so long as the payments were in fact made. Moreover, continued payment of premiums under the circumstances shown is not the least inconsistent with plaintiff's contention that his rights to benefits matured and became fixed and constant upon the occurrence of the insured risk, namely, the diagnosis previously noted. The uninterrupted payment of premiums served merely to continue in force, for the duration of the payments, such other coverage as was afforded plaintiff (and any other included persons listed on the application), consisting, inter alia, of medical, surgical and hospital treatment occasioned by accidental injury or the diagnosis of one of the other diseases enumerated in the endorsement. Plaintiff was obviously in no position to demand the return of the premiums paid following the diagnosis of his illness as they constitute consideration for continuation of such other coverage as the policy provided. Therefore, we consider appellee's failure to claim said premium payments a matter of no significance herein.
For the reasons herein assigned, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.